[No. S147848. July 21, 2008.]

MICHELLE SIMMONS, as Personal Representative, etc., et al., Plaintiffs and Respondents, v.
LIDA GHADERI, Defendant and Appellant.

COUNSEL

Morrison & Foerster, Shirley M. Hufstedler, Sarvenaz Bahar; Reback, McAndrews & Kjar, Robert C. Reback and Melanie Shornick for Defendant and Appellant.

Law Office of Ivan K. Stevenson and Ivan K. Stevenson for Confidential Mediation & Dispute Resolution and Southern California Mediation Association as Amici Curiae on behalf of Defendant and Appellant.

James R. Madison; Farbstein & Blackman and John S. Blackman for California Dispute Resolution Council as Amicus Curiae on behalf of Defendant and Appellant.

Law Offices of James Aaron Pflaster, Martin R. Berman, Stephanie C. Pflaster and James Aaron Pflaster for Plaintiffs and Respondents.

## OPINION

CHIN, J.—Evidence Code section 1115 et seq.[1] sets forth an extensive statutory scheme protecting the confidentiality of mediation proceedings, with narrowly delineated exceptions. In this breach of contract action arising from a medical malpractice suit, plaintiffs sought to enforce an oral settlement agreement allegedly formed during mediation. During pretrial proceedings, the doctor stipulated to, and submitted evidence of, events which had occurred during mediation, arguing that no enforceable contract was formed during mediation. For the first time at trial, the doctor invoked the mediation confidentiality statutes to prevent plaintiffs from introducing evidence relating to the mediation proceedings. Over the doctor's objection, the trial court admitted the evidence.

A majority of the Court of Appeal held that, despite the statutory confidentiality protections, the doctor was judicially estopped from arguing that evidence of the settlement agreement is statutorily inadmissible; she "placed before the trial court the facts of the mediation and sought a legal determination as to their effect." We conclude that the Court of Appeal improperly relied on the doctrine of estoppel to create a judicial exception to the comprehensive statutory scheme of mediation confidentiality and that the evidence relating to the mediation proceedings should not have been admitted at trial.

### I. FACTUAL AND PROCEDURAL HISTORY

On March 27, 2002, plaintiffs (the minor son and mother of Kintausha Clemmons) filed a wrongful death complaint against defendant Dr. Lida Ghaderi, alleging that her medical malpractice caused the death of Kintausha Clemmons. Cooperative of American Physicians, Inc./Mutual Protection Trust (CAP-MPT) was defendant's medical malpractice insurance provider.

On July 9, 2003, the parties attended a mediation with the Honorable Robert T. Altman, retired. Plaintiffs and their counsel appeared. Defendant

---

[1] All further statutory references are to the Evidence Code.

was present with a CAP-MPT claims specialist, the CAP-MPT attorney, and *Cumis* counsel.[2] Under the provisions of her professional liability policy with CAP-MPT, defendant had the right to withhold her consent to the settlement of any third party malpractice claim. At the request of the mediator, before the beginning of settlement discussions, defendant executed a standard consent-to-settlement form provided by CAP-MPT. This document authorized CAP-MPT to negotiate a settlement on defendant's behalf, with the settlement value limited to $125,000. The document also stated that defendant's consent to settlement could only be revoked in writing and would remain in force until a written revocation was received by CAP-MPT at its offices.

The parties then engaged in settlement discussions while defendant waited in another room with *Cumis* counsel. At one point, CAP-MPT instructed Judge Altman to offer plaintiffs $125,000 to settle the matter in exchange for a dismissal with prejudice and a waiver of costs. Plaintiffs orally accepted the offer. Judge Altman then placed the essential terms of the settlement into a document for the parties to sign. When defendant was informed that the case had settled, she declared that she was revoking her consent and left the building without signing the settlement agreement. The claims specialist, unsure of how to proceed, contacted the CAP-MPT office and learned that CAP-MPT would consider defendant's oral revocation of her consent valid. Plaintiffs and their counsel signed the settlement agreement, but no one signed on behalf of defendant or CAP-MPT.

The following day, plaintiffs' attorney and CAP-MPT's attorney appeared in court and sought guidance. Both counsel recounted the facts of the mediation to the court, including defendant's written consent to settle for $125,000, the offer in that amount, the acceptance of the offer, and defendant's departure while the settlement was being reduced to writing. The trial court speculated that there might be an enforceable oral settlement agreement. Accordingly, the trial court vacated the trial date and set the matter for an order to show cause why the case should not be dismissed.

On July 16, 2003, defendant sent CAP-MPT a letter formally revoking her consent to settle.

At the July 29, 2003, dismissal hearing, defendant spoke with the trial court. The court stated on the record that defendant was unwilling to consent

---

[2] *Cumis* counsel refers to independent counsel provided to an insured by an insurer contesting coverage, but still providing a defense. (*San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 364 [208 Cal.Rptr. 494]; Civ. Code, § 2860.

to the settlement, but then suggested that plaintiffs move to enforce the settlement under Code of Civil Procedure section 664.6.[3]

On August 15, 2003, plaintiffs moved to enforce the settlement on the ground that an oral agreement had been reached with CAP-MPT while CAP-MPT had defendant's consent to settle the action. Plaintiffs supported their motion with a copy of defendant's signed consent to settle, the written settlement agreement prepared by Judge Altman and signed only by plaintiffs and their counsel, and declarations from plaintiffs' attorney and the mediator setting forth the events at the July 9 mediation.

In opposing plaintiffs' motion to enforce, defendant did not dispute their factual representations regarding the mediation. Instead, arguing the legal effect of those facts, she claimed that the settlement could not be enforced because it did not meet the requirements of Code of Civil Procedure section 664.6. Defendant argued that no agreement had been consummated; she had not signed the written settlement agreement and had withdrawn her consent, and therefore CAP-MPT had no authority to execute a settlement agreement on her behalf. The trial court denied the motion to enforce settlement. It found that, because neither defendant nor CAP-MPT had signed the written agreement, the requirements of Code of Civil Procedure section 664.6 had not been met. However, it noted there might be an enforceable oral contract and suggested plaintiffs amend their complaint to allege breach of contract.

Following the trial court's suggestion, plaintiffs amended their complaint to add a cause for breach of contract and alleged that defendant breached an oral settlement agreement reached during mediation. Plaintiffs served a request for admissions on defendant and deposed her. In response to this discovery and in her motion for summary adjudication of the breach of contract cause, defendant did not dispute the events that had occurred during the mediation. Indeed, in a declaration appended to her motion, defendant proffered that she had signed a written consent for CAP-MPT to settle, her counsel had made a $125,000 settlement offer to plaintiffs, and she had revoked her consent without executing the settlement agreement.

The trial court denied defendant's motion for summary adjudication of the breach of contract cause of action and granted plaintiffs' motion to sever the breach of contract and medical malpractice claims. The case proceeded to trial only on the breach of contract cause.

---

[3] Code of Civil Procedure section 664.6 states, "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

On October 6, 2004, nearly 15 months after the mediation, defendant filed her trial brief. For the first time, she asserted that the mediation confidentiality statutes precluded plaintiffs from proving the existence of an oral settlement agreement. Defendant's trial brief raised no other issue.

At a bench trial, over defendant's objection, plaintiffs submitted the following documents relating to the mediation: (1) the consent to settlement signed by defendant; (2) the settlement agreement prepared by Judge Altman; (3) defendant's letter revoking her consent to settlement; (4) defendant's deposition testimony; (5) the deposition testimony of the CAP-MPT claims specialist; and (6) a declaration from Judge Altman. The parties agreed to almost everything that had occurred at the mediation, except what the CAP-MPT claims specialist did once defendant had refused to sign the document. Over defendant's objection, the CAP-MPT claims specialist testified about the events of the mediation.

The trial court concluded that plaintiffs and defendant's agent, acting within his authority as evidenced by defendant's signed consent agreement, had entered into a valid, enforceable oral contract before defendant withdrew her consent. It ordered specific performance of the agreement and entered judgment in favor of plaintiffs for $125,000, plus prejudgment interest.

In a two-to-one decision, the Court of Appeal affirmed the trial court's judgment. The majority held that a valid oral agreement had been reached during mediation. It further held that, because defendant had presented evidence of the occurrences at the mediation and failed to object to plaintiffs' use of these facts during pretrial motions, she was estopped from asserting mediation confidentiality. In his dissent, Justice Aldrich maintained that the mediation confidentiality statutes prevented plaintiffs from proving the existence of an oral settlement agreement, that the majority's focus on estoppel was "a veiled attempt at relabeling waiver as estoppel," and that a party cannot impliedly waive mediation confidentiality through litigation conduct.

We granted defendant's petition for review to determine if she could be estopped from objecting to the admission of evidence proving the existence of an oral settlement agreement reached during mediation proceedings.

## II. Discussion

Defendant contends that the Court of Appeal majority improperly relied on the doctrine of estoppel to create a judicial exception to the statutory requirements of confidentiality of mediation proceedings. (§ 1115 et seq.) As explained below, we agree.

### 1. *The Mediation Confidentiality Statutes*

In 1997, the Legislature adopted the California Law Revision Commission's (Commission) recommendations and revised the mediation confidentiality statutes. (*Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 194–196 [51 Cal.Rptr.3d 871, 147 P.3d 653] (*Fair*).) It enacted section 1115 et seq., creating an extensive statutory scheme governing mediation confidentiality and its exceptions. (*Fair, supra*, at pp. 194–196.)

"California's Legislature has a strong policy favoring mediation as an alternative to litigation. Because mediation provides a simple, quick, and economical means of resolving disputes, and because it may also help reduce the court system's backlog of cases, it is in the public interest to encourage its use. [Citation.]" (*Doe 1 v. Superior Court* (2005) 132 Cal.App.4th 1160, 1165 [34 Cal.Rptr.3d 248].) The Legislature designed the mediation confidentiality statutes to "promote 'a candid and informal exchange regarding events in the past . . . . This frank exchange is achieved only if the participants know that what is said in the mediation will not be used to their detriment through later court proceedings and other adjudicatory processes.' [Citations.]" (*Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 14 [108 Cal.Rptr.2d 642, 25 P.3d 1117] (*Foxgate*).) "[C]onfidentiality is essential to effective mediation . . . ." (*Ibid.*)

■ Section 1119 governs the general admissibility of oral and written communications made during the mediation process. It "prohibits any person, mediator and participants alike, from revealing any written or oral communication made during mediation." (*Foxgate, supra*, 26 Cal.4th at p. 13.) Section 1119, subdivision (a) states, in pertinent part, that: "Except as otherwise provided in this chapter: [¶] (a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation . . . is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any . . . civil action . . . ."

Similarly, section 1119, subdivision (b) states, in pertinent part, that: "Except as otherwise provided in this chapter: [¶] . . . [¶] No writing . . . that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any . . . civil action . . . ." Section 1119, subdivision (c) further mandates that "All communications, negotiations, or settlement discussions by and between participants in the course of a mediation . . . shall remain confidential."

Sections 1122 and 1124 specifically lay out exceptions for the admission of evidence produced during mediation. As relevant here, section 1122,

subdivision (a)(1) provides that "[a] communication or a writing . . . that is made or prepared for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if . . . the following condition[] is satisfied: [¶] (1) All persons who conduct or otherwise participate in the mediation expressly agree in writing, or orally in accordance with Section 1118, to disclosure of the communication, document, or writing."

█ Section 1124 specifies that an oral agreement made in the course of, or pursuant to, a mediation is not made inadmissible, or protected from disclosure, if certain conditions involving section 1118 are satisfied.[4] Oral agreements in accordance with section 1118 occur when: (a) the oral agreement is recorded by a court reporter, tape recorder, or other reliable means of sound recording; (b) the terms of the oral agreement are recited on the record in the presence of the parties and the mediator, and the parties express on the record that they agree to the terms recited; (c) the parties to the oral agreement expressly state on the record that the agreement is enforceable or binding or words to that effect; and (d) the recording is reduced to writing and the writing is signed by the parties within 72 hours after it is recorded.

The legislative scheme also provides rules for the use of written settlement agreements produced during mediation. Section 1123 protects the confidentiality of any written agreement made during mediation unless the parties expressly agree to disclosure or the agreement is used to show fraud, duress, or illegality.[5]

---

[4] Section 1124 states:

"An oral agreement made in the course of, or pursuant to, a mediation is not made inadmissible, or protected from disclosure, by the provisions of this chapter if any of the following conditions are satisfied:

"(a) The agreement is in accordance with Section 1118.

"(b) The agreement is in accordance with subdivisions (a), (b), and (d) of Section 1118, and all parties to the agreement expressly agree, in writing or orally in accordance with Section 1118, to disclosure of the agreement.

"(c) The agreement is in accordance with subdivisions (a), (b), and (d) of Section 1118, and the agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."

[5] Section 1123 reads:

"A written settlement agreement prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if the agreement is signed by the settling parties and any of the following conditions are satisfied:

"(a) The agreement provides that it is admissible or subject to disclosure, or words to that effect.

"(b) The agreement provides that it is enforceable or binding or words to that effect.

"(c) All parties to the agreement expressly agree in writing, or orally in accordance with Section 1118, to its disclosure.

"(d) The agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."

■ Further, statements made during mediation and mediation materials are confidential not only during the mediation, but also after the mediation ends. Section 1126 clarifies that "[a]nything said, any admission made, or any writing that is inadmissible, protected from disclosure, and confidential under this chapter before a mediation ends, shall remain inadmissible, protected from disclosure, and confidential to the same extent after the mediation ends."

In addition to the unambiguous language of the mediation confidentiality statutes, the Commission's comments further demonstrate that the Legislature intended to apply confidentiality broadly and to limit any exceptions to confidentiality to narrowly prescribed statutory exemptions. (*Fair, supra*, 40 Cal.4th at p. 195 [the "Commission's official comments are deemed to express the Legislature's intent"].) The Commission's comment to section 1124 states explicitly that the section sets forth specific circumstances under which mediation confidentiality is inapplicable to an oral agreement reached through mediation. Except in those circumstances, sections 1119 and 1124 codify the rule of *Ryan v. Garcia* (1994) 27 Cal.App.4th 1006 [33 Cal.Rptr.2d 158] (*Ryan*) (mediation confidentiality applies to oral statement of settlement terms) and reject the contrary approach of *Regents of University of California v. Sumner* (1996) 42 Cal.App.4th 1209 [50 Cal.Rptr.2d 200] (*Regents*) (mediation confidentiality does not protect oral statement of settlement terms). (Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code (2008 supp.) foll. § 1124, p. 257 (hereafter California Law Revision Comments).)

As noted in the Commission's comment, with section 1124 the Legislature created a specific mechanism for the admission of evidence regarding oral settlement agreements made during mediation. This mechanism was created in reaction to two conflicting Court of Appeal decisions, *Ryan* and *Regents*.

In *Ryan, supra*, 27 Cal.App.4th at page 1013, the Court of Appeal held that under former section 1152.5 (now section 1119), evidence offered to prove the terms of an oral settlement agreement reached during mediation was inadmissible because it did not meet statutory requirements. In *Ryan*, the parties went to mediation, agreed to a compromise, and orally recited the terms of the agreement. (27 Cal.App.4th at pp. 1008–1009.) The agreement, however, was never reduced to writing, and the defendant later contested the terms of the settlement. (*Ibid.*) The plaintiffs amended their complaint to add a cause of action to enforce the oral settlement. (*Id.* at p. 1009.) Over defendant's objections, the trial court admitted evidence of the oral recitation of the settlement terms to prove the existence of an agreement. (*Ibid.*) The court reasoned that once the mediator announced the compromise, statements made thereafter were not produced in the course of mediation and were not protected under section 1152.5. (*Ryan*, at p. 1009.)

The defendant appealed, claiming the statements concerning the existence and terms of the settlement agreement were part of the mediation and therefore inadmissible. (*Ryan, supra*, 27 Cal.App.4th at p. 1010.) Noting that former section 1152.5 should be broadly interpreted to ensure confidentiality, the Court of Appeal held that the oral statements made after the announced compromise were made in "the course of mediation." (*Ryan*, at p. 1013.) The court rejected the plaintiffs' argument that such interpretation of the statutory scheme would divest mediation of its intended usefulness, and it noted that the statutes provided a procedural mechanism to protect confidentiality and simple and clear means for enforcement of agreed-upon settlements. (*Id.* at p. 1012.)

Subsequently, in *Regents, supra*, 42 Cal.App.4th 1209, the Court of Appeal declined to follow *Ryan* and held that former section 1152.5 did not bar introduction of oral statements evidencing a settlement made after a compromise had been achieved. Although the Court of Appeal acknowledged its decision contradicted *Ryan*, it nonetheless concluded that a trial court could admit evidence of oral statements made after a compromise had been reached. (*Regents, supra*, 42 Cal.App.4th at p. 1213.)

■ The *Regents* rule, however, was expressly rejected by the Legislature when it revised the mediation confidentiality statutes. The Commission's comment to section 1124 provides that, except when the requirements expressly laid out in sections 1124 and 1118 are met, sections 1119 and 1124 together codify the rule of *Ryan* and reject that of *Regents*. (Cal. Law Revision Com., *supra*, foll. § 1124, p. 257.) Section 1119 is more expansive than its predecessor, former section 1152.5. Section 1119, subdivision (a), extends to oral communications made for the purpose of or pursuant to a mediation, not just to oral communications made in the course of the mediation. (Cal. Law Revision Com., *supra*, foll. § 1119, p. 241.) It also explicitly applies in a subsequent arbitration or administrative adjudication, as well as in any civil proceeding. (*Ibid.*) Recognizing both the breadth and clarity of the mediation confidentiality statutes, we have concluded that the legislative scheme is clear and unambiguous, and that the Legislature intended for mediation confidentiality to apply according to the statutory rules. (*Foxgate, supra*, 26 Cal.4th at p. 14.) Thus, mediation confidentiality now clearly applies to prohibit admissibility of evidence of settlement terms made for the purpose of, in the course of, or pursuant to a mediation unless the agreement falls within express statutory exceptions. (§ 1119, subd. (a).)

■ In the present case, an oral agreement may have been reached between defendant's insurer and plaintiffs during the mediation; however, the parties did not follow the statutory procedures that would have made this agreement admissible. Specifically, no form of recordation of the oral agreement exists, nor is there a written agreement signed by both parties. (§§ 1118,

1122, 1124.) The agreement as memorialized by Judge Altman is similarly inadmissible under sections 1119, 1122, and 1123, as there was no express agreement that it could be disclosed, and it was not signed by defendant or her attorneys. The Court of Appeal and the parties do not dispute that evidence of the oral settlement agreement was inadmissible under the statutory requirements.

### 2. *Judicially Created Exceptions to Mediation Confidentiality*

Nevertheless, the Court of Appeal majority relied on the doctrine of estoppel to "prevent a litigant from tardily relying on mediation confidentiality to shield from the court facts which she had stipulated to be true and had extensively litigated without raising such bar." The dissenting opinion noted, however, that, "[b]y focusing on estoppel, the majority in essence is attempting to create a new exception to the comprehensive scheme." We agree with this latter characterization.

■ On limited occasions, courts have crafted exceptions to mediation confidentiality and compelled mediators to testify in civil actions. However, those instances are very limited. In *Rinaker v. Superior Court* (1998) 62 Cal.App.4th 155, 167 [74 Cal.Rptr.2d 464], the court compelled a mediator to testify because it found that a minor's due process right to confrontation of witnesses outweighed the statutory right to mediation confidentiality. In *Olam v. Congress Mortg. Co.* (N.D.Cal. 1999) 68 F.Supp.2d 1110, 1118–1119, 1129, the parties themselves expressly waived confidentiality. Because of this waiver, the court found that the policy driving mediation confidentiality had appreciably less force. (*Id.* at p. 1133.)

■ Except in cases of express waiver or where due process is implicated, we have held that mediation confidentiality is to be strictly enforced. In *Foxgate*, we addressed the general validity of judicially crafted exceptions to mediation confidentiality. (*Foxgate, supra,* 26 Cal.4th 1.) There, the Court of Appeal found an exception to section 1119 that would allow a mediator to report a party's failure to participate in good faith in the mediation process. (*Foxgate, supra,* 26 Cal.4th at p. 9.) We held that the Court of Appeal erred in judicially creating an exception to section 1119. Distinguishing *Rinaker* and *Olam*, we noted that where a supervening due process right is not implicated or where no express waiver of confidentiality exists, judicially crafted exceptions to mediation confidentiality are not appropriate. (*Foxgate,* at pp. 15–17.) To this end, we announced that in order "[t]o carry out the [legislative] purpose of encouraging mediation by ensuring confidentiality, the statutory scheme . . . unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." (*Id.* at p. 15,

fn. omitted.) Further, judicial construction of unambiguous statutes is appropriate only when literal interpretation would yield absurd results. (*Id.* at p. 14.)

In deciding whether a judicial exception was appropriate to carry out the Legislature's goals, we observed that with the enactment of the mediation confidentiality statutes, the Legislature contemplated that some behavior during mediation would go unpunished. (*Foxgate, supra*, 26 Cal.4th at p. 17.) The Legislature was also presumably aware that general sanctions statutes permit punishing bad faith conduct. Considering this, we reasoned we were bound to respect the Legislature's policy choice to protect mediation confidentiality rather than create a procedure that encouraged good faith participation in mediation. Thus, we held that evidence of a party's bad faith during the mediation may not be admitted or considered. (*Ibid.*)

■ We subsequently reaffirmed that the mediation confidentiality statutes unqualifiedly bar disclosure of certain communications and writings produced in mediation absent an express statutory exception. (*Rojas v. Superior Court* (2004) 33 Cal.4th 407 [15 Cal.Rptr.3d 643, 93 P.3d 260] (*Rojas*).) In *Rojas*, the Court of Appeal concluded that, like work product, certain derivative materials exchanged during mediation were discoverable on a good cause showing. (*Id.* at p. 414.) Rejecting this conclusion, we noted that section 2018 of the Code of Civil Procedure codified the good cause exception to the work product doctrine; the Legislature clearly knew how to enact a statutory good cause exception to the mediation confidentiality statutes, but it chose not to do so. (*Rojas*, at p. 423.) Furthermore, the Legislature had enacted other statutory exceptions to mediation confidentiality. " 'Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, [courts] may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]' " (*Id.* at p. 424.) Finding no such intent, we concluded that judicial exceptions should not be read into Evidence Code section 1119. (*Rojas*, at p. 424; *Fair, supra*, 40 Cal.4th at p. 194 [reaffirming the disapproval of judicially crafted exceptions to the mediation confidentiality statutes].)

Like *Foxgate* and *Rojas*, the present case does not implicate any due process right equivalent to the right bestowed by the confrontation clause of the United States Constitution, nor have the parties executed express waivers of confidentiality. Thus, *Rinaker* and *Olam* are distinguishable, and their rationale inapplicable. Instead, by creating fixed procedures that allow only certain evidence produced at mediation to be admitted in later civil proceedings, the Legislature was undeniably aware that some agreements made during mediation would not be enforceable. The statutes thus reflect a policy judgment made by the Legislature when weighing the value of confidentiality.

Creating exceptions to admit evidence that does not meet statutory requirements would run contrary to legislative intent.

### 3. *Estoppel*

Despite the clear legislative intent, the Court of Appeal majority nonetheless estopped defendant from invoking mediation confidentiality because she herself used and did not object to plaintiffs' use of evidence describing the events of mediation.

█ The estoppel cases on which the Court of Appeal relied are inapt. The majority concluded that, "once a party voluntarily declares certain facts to be true, stipulates that she does not dispute them and extensively litigates the legal effect of such facts, she is estopped to later claim that the court must disregard those facts based upon a belated assertion of mediation confidentiality." To support this statement, the majority opinion relied on *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1414 [122 Cal.Rptr.2d 167], and *Conservatorship of Kevin M.* (1996) 49 Cal.App.4th 79, 92 [56 Cal.Rptr.2d 765]. These cases involved estoppel to contest jurisdiction. That doctrine provides that when a court has subject matter jurisdiction over an action, "a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction." (*In re Griffin* (1967) 67 Cal.2d 343, 347 [62 Cal.Rptr. 1, 431 P.2d 625].)

As Justice Aldrich noted in his dissent, defendant does not contest the jurisdiction of the court over the breach of contract matter. Similarly, she did not use or initiate a procedure and then argue against its use in court. Here, estoppel to contest jurisdiction does not apply; defendant never asked the court to act in excess of its jurisdiction and then argue that the court had no power to act as it did. Instead, defendant consistently invoked the court's jurisdiction throughout the litigation proceedings, maintaining that there was no enforceable settlement agreement either because substantively such agreement did not occur or because plaintiffs could not procedurally prove its existence.

█ Like estoppel to contest jurisdiction, equitable estoppel also does not apply. A valid claim for equitable estoppel requires: (a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it. (13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 191, pp. 527–528.) There can be no estoppel if one of these elements is missing. (*Id.* at p. 528.) Here, plaintiffs were never

ignorant of the facts, nor did they change their position in reliance on defendant's position. Thus, estoppel principles do not apply.

### 4. *Waiver*

The Court of Appeal's dissenting opinion more accurately portrays the substance of this case when it characterizes the majority's decision as "a veiled attempt at relabeling waiver as estoppel." The facts of this case reveal that the real issue is whether a party can impliedly waive mediation confidentiality through litigation conduct. Indeed, plaintiffs now argue in this court that defendant waived mediation confidentiality through her litigation conduct.

**(11)** Civil Code section 3513 makes the doctrine of waiver applicable to all rights and privileges that a person is entitled to, including those conferred by statute, unless otherwise prohibited by specific statutory provisions. (*Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 41 [124 Cal.Rptr. 852].) Thus, whether or not implied waiver applies to mediation confidentiality is ultimately an issue of statutory interpretation.

In arguing that defendant impliedly waived mediation confidentiality, plaintiffs refer to language in *Regents, supra,* 42 Cal.App.4th at page 1213, and *Foxgate, supra,* 26 Cal.4th at page 10, footnote 7. In *Regents,* the court held that a party may waive mediation confidentiality through conduct. In *Foxgate,* we simply described the *Regents* holding in a footnote without endorsing the *Regents* decision. In revising the mediation confidentiality statutes, the Legislature cast doubt on *Regents* when it specifically rejected its holding. Thus, these cases do not provide support to plaintiffs.

Indeed, when interpreting the current mediation confidentiality statutes, at least one court has held that mediation confidentiality cannot be impliedly waived through conduct. (*Eisendrath v. Superior Court* (2003) 109 Cal.App.4th 351, 360–365 [134 Cal.Rptr.2d 716] (*Eisendrath*).) In *Eisendrath,* a husband (plaintiff) and wife (defendant) agreed to undergo mediation of their divorce pursuant to the statutory rules set forth in section 1115 et seq. (*Eisendrath,* at p. 354.) The trial court entered judgment pursuant to the settlement reached at mediation, and the plaintiff filed a motion to correct or reform the judgment after both parties remarried. (*Id.* at p. 355.) The defendant then sought to depose the mediator, and the plaintiff opposed, citing mediation confidentiality. (*Id.* at p. 356.) The trial court held that the plaintiff impliedly waived confidentiality by raising a claim about the agreement in court and revealing communications that had occurred at the mediation in his declaration. (*Id.* at pp. 356–357.) The plaintiff appealed. (*Id.* at p. 357.)

On appeal, the defendant argued that mediation confidentiality is akin to the evidentiary privileges laid out in section 910 et seq., privileges that section 912 states may be waived by conduct.[6] (*Eisendrath, supra,* 109 Cal.App.4th at p. 357.) Because the plaintiff raised the issue with his suit and in supporting declarations, the defendant argued he could not claim confidentiality. (*Ibid.*) The Court of Appeal concluded that the implied waiver provisions in section 910 et seq., by their plain language, are limited to the particular privileges enumerated therein and therefore do not extend to mediation confidentiality. (*Eisendrath,* at p. 363.)

 A court may not extend waiver provisions beyond their existing statutory limits. (See *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 373 [20 Cal.Rptr.2d 330, 853 P.2d 496].) Furthermore, courts may not add to statutory privileges except as required by federal and state constitutional law; nor may a court imply exceptions to existing statutory privileges. (*Ibid.*) Accordingly, *Eisendrath* correctly concludes that section 912 cannot be expanded beyond its express limits.

 We must still determine whether the mediation confidentiality statutes themselves permit implied waiver. Section 1122, the section dealing expressly with waiver, states that a communication made during mediation is not inadmissible if "[a]ll persons who conduct or otherwise participate in the mediation *expressly agree* in writing, or orally in accordance with Section 1118, to disclosure . . . ." (§ 1122, subd. (a)(1), italics added.) Furthermore, the Commission's comments provide, "[s]ubdivision (a)(1) [of section 1122] states the general rule that mediation documents and communications may be admitted or disclosed *only upon agreement of all participants,* including not only parties but also the mediator and other nonparties attending the mediation . . . . *Agreement must be express, not implied.*" (Cal. Law Revision Com., *supra,* foll. § 1122, p. 252, italics added.) The comment continues, "For exceptions to Section 1122, see Sections 1123 (written settlement agreements reached through mediation) and 1124 (oral agreements reached through mediation) . . . ." (*Ibid.*)

Because the language of section 1122 unambiguously requires express waiver, judicial construction is not permitted unless the statutes cannot be applied according to their terms or doing so would lead to absurd results, thereby violating the presumed intent of the Legislature. (*Foxgate, supra,* 26

---

[6] Such privileges include the lawyer-client privilege (§ 954); the privilege for confidential marital communications (§ 980); the physician-patient privilege (§ 994); the psychotherapist-patient privilege (§ 1014); the clergymember-penitent privilege (§§ 1033, 1034); the sexual assault victim-counselor privilege (§ 1035.8); and the domestic violence victim-counselor privilege (§ 1037.5).

Cal.4th at p. 14.) Moreover, because the Legislature provided express exceptions to section 1119, " '[u]nder the maxim of statutory construction, *expressio unius est exclusio alterius,* . . . we may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]' " (*Rojas, supra,* 33 Cal.4th at p. 424.)

Plaintiffs argue that allowing defendant to assert mediation confidentiality after litigating various pretrial motions would produce absurd results. In *Eisendrath, supra,* 109 Cal.App.4th at pages 363–364, the Court of Appeal concluded that judicial modification of the mediation confidentiality scheme was not required to prevent absurd results or to fulfill legislative intent. On the facts of that case, the result was not absurd because, without express waivers, neither the plaintiff nor the defendant could introduce evidence of what had happened at mediation. (*Ibid.*) However, the court also found that the result was not absurd on a more general level; the court remarked that *Foxgate* recognized that the mediation confidentiality statutes effectively give control over evidence of certain misconduct to the party engaged in the misconduct. (*Eisendrath,* at p. 365.) Nonetheless, in *Foxgate,* we found it dispositive that "none of the confidentiality statutes currently make an exception for reporting bad faith conduct . . . when doing so would require disclosure of communications . . . ." (*Foxgate, supra,* 26 Cal.4th at p. 17.) Accordingly, the *Eisendrath* court concluded, "[f]ollowing the *Foxgate* court, we assume that the Legislature considered these limitations on the presentation of evidence when it enacted the statutory scheme." (*Eisendrath, supra,* 109 Cal.App.4th at p. 365.)

Here, the clear language of the statutory scheme and other indications of legislative intent reflect that disallowing an implied waiver would not produce absurd consequences, but was rather an intended consequence. First, as the court in *Eisendrath* noted, section 1119 sweeps broadly and renders *all* communications and writings made during mediation inadmissible except as otherwise specified in the statutes. (*Eisendrath, supra,* 109 Cal.App.4th at p. 364.) Section 1122 plainly states that mediation communications or writings may be admitted *only on agreement* of all participants. Such agreement *must be express, not implied.* We recognized that the Legislature intended section 1122 to give litigants control over whether a mediation communication will be used in subsequent litigation. (See *Rojas, supra,* 33 Cal.4th at p. 423.) However, the section does not limit this control other than as stated through sections 1123 and 1124. (Cal. Law Revision Com., *supra,* foll. § 1122, p. 252.) Thus, the language of the statutory scheme reflects that it was intended to be complete.

Section 912, regarding the waiver of privileges, further shows that the Legislature did not intend for implied waiver to apply to mediation confidentiality. Section 912 existed when the Legislature drafted section 1115 et seq.

In *Foxgate*, we noted that Code of Civil Procedure section 128.5 allowed a court to sanction bad faith behavior. (*Foxgate, supra*, 26 Cal.4th at p. 17.) Yet, we observed that no confidentiality statute made an exception for reporting bad faith conduct through the disclosure of mediation communications. (*Ibid.*) Similarly, the Legislature is capable of drafting statutes that allow for implied waivers of confidentiality through conduct, but it did not do so in section 1122 or anywhere within the mediation confidentiality statutes. The Legislature is assumed to have considered the limitations on the presentation of evidence when it enacted the statutory scheme. (See *Foxgate*, at p. 17.)

Section 1115's placement within the Evidence Code further supports the conclusion that implied waiver does not apply to mediation confidentiality. Unlike the privileges subject to implied waiver that are found in division 8, entitled "Privileges," the Legislature placed section 1115 et seq. in division 9, entitled "Evidence Affected or Excluded by Extrinsic Policies." This placement reflects that the Legislature considered the specific limitations placed on the admissibility of evidence by the mediation confidentiality statutes and endorsed those limitations to encourage mediation as a matter of public policy.

Finally, the legislative history of the mediation confidentiality statutes as a whole reflects a desire that section 1115 et seq. be strictly followed in the interest of efficiency. By laying down clear rules, the Legislature intended to reduce litigation over the admissibility and disclosure of evidence regarding settlements and communications that occur during mediation. (Recommendation on Mediation Confidentiality (Jan. 1997) 26 Cal. Law Revision Com. Rep. (1996) p. 424.) Allowing courts to craft judicial exceptions to the statutory rules would run counter to that intent.

Both the clear language of the mediation statutes and our prior rulings support the preclusion of an implied waiver exception. The Legislature chose to promote mediation by ensuring confidentiality rather than adopt a scheme to ensure good behavior in the mediation and litigation process. The mediation statutes provide clear and comprehensive rules reflecting that policy choice.

Here, the mediation confidentiality statutes made inadmissible all evidence of an oral contract between plaintiffs and defendant during mediation. Thus, there was no evidence to prove plaintiffs' breach of contract claim, and defendant was entitled to judgment as a matter of law. However, plaintiffs may still pursue their medical malpractice cause of action before the trial court.

## III. Disposition

We reverse the judgment of the Court of Appeal and remand the case to that court for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.