Filed 2/11/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EDDIE E.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Parties in Interest. | G049637<br><br>(Super. Ct. No. DL039927)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Nick A. Dourbetas, Judge. Petition granted.

Esperanza Immigrant Rights Project, Catholic Charities of Los Angeles, Lindsay Toczylowski and Rachel Prandini for Petitioner.

No appearance by Respondent.

No appearance by Real Party in Interest.

Petitioner Eddie E., an undocumented immigrant, petitions for a writ of mandate to overturn the court's refusal to make favorable findings under the Immigration and Nationality Act, title 8 of the United States Code section 1101(a)(27)(J) (section 1101(a)(27)(J) or the SIJ statute), which findings are a prerequisite to him applying for special immigrant juvenile (SIJ) status, a path to citizenship. We issued an order to real party in interest to show cause why a writ of mandate should not issue.

SIJ status cannot be granted unless a state court finds, among other things, that petitioner cannot reunify with "1 or both" of his parents due to abuse, neglect, or abandonment, and that it would not be in petitioner's best interest to return to his home country. (§ 1101(a)(27)(J)(i)-(ii).) The trial court refused to make either finding. It found that even though his mother abandoned him, he was living with his father and thus reunification was possible with his father. It also held that mother's subsequent death meant petitioner's inability to reunify with her was due to death, not abandonment. It further found that a "fresh start" in Mexico would be good for petitioner, and thus returning him to Mexico was in petitioner's best interest.

We disagree. "[One] or both" is disjunctive, and petitioner proved he was abandoned by his mother, satisfying that condition. True, mother died, but that only made the abandonment permanent. We also disagree with the court's analysis of petitioner's best interest. The evidence shows beyond dispute that it is not in petitioner's best interest to return to Mexico. Accordingly, we grant the petition.

FACTS

Petitioner was born in Mexico. When he was five years old, his mother brought him and his two older siblings to the United States, apparently without documentation, to reunify with his father. Petitioner has never returned to Mexico.

2

Petitioner's mother left the family when he was eight years old. Mother never returned, provided financial support, or even attempted to contact the family after she left. Mother died approximately seven years after she left.

Petitioner continued living with his father, but lived a hard life. His father had diabetes and drank excessively, which further exacerbated his diabetes. Though father never abused petitioner, his condition made it hard to find work and provide for the family. As a result of his inability to pay rent, the family was frequently evicted. Petitioner lived in several cities in California and in Phoenix, Arizona. As a result of moving around so much, petitioner rarely went to school, and never attended any school for more than one year.

In April 2011, a juvenile delinquency case was filed against petitioner leading to a finding that he had unlawfully taken a vehicle, was guilty of hit and run causing property damage, and resisted or obstructed a public officer. Petitioner was declared a ward of the court pursuant to Welfare and Institutions Code section 602. The court imposed probation and eight days in juvenile hall. Petitioner was released from juvenile hall directly to United States Immigration and Customs Enforcement, though he remained a ward of the court.

While in custody, petitioner managed to "[get] his life back on the right track" by not only graduating from high school, but doing so with a 4.0 grade point average (excluding the period before his probation), which petitioner described as "by far the most important achievement of my life."

In December 2012, petitioner requested that the court make findings pursuant to section 1101(a)(27)(J) so that he could file for SIJ status. The request was unopposed by the People.

The three prerequisite findings to filing for SIJ status are: (1) that the petitioner has been declared dependent on a juvenile court *or* "such a court has legally committed [petitioner] to, or placed [petitioner] under the custody of, an agency or department of a State" (or an individual or entity appointed by a state), (2) "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law," and (3) "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." (§ 1101(a)(27)(J)(i)-(ii).)[1] The first time the court addressed petitioner's request, it did not reach the second or third prerequisite, finding petitioner's commitment to juvenile hall and to probation did not qualify as being a dependent of the juvenile court. (*Eddie E. v. Superior Court* (2013) 223 Cal.App.4th 622, 628 (*Eddie E.*).)

In October 2013, we issued a writ of mandate reversing the court's decision, holding petitioner need not be a dependent under Welfare and Institutions Code section 300 to satisfy the first prerequisite because "[u]nder the plain language of the statute [citation], dependency under section 300 is not the only manner in which petitioner could satisfy the first part of title 8 United States Code section 1101(a)(27)(J)(i). Rather, as an alternative basis, a resident alien in petitioner's position may also demonstrate he had been 'legally committed to, or placed in the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States.'" (*Eddie E.*, *supra*, 223 Cal.App.4th at p. 628.) We instructed the court on remand to consider whether petitioner had satisfied this alternative basis, and, if so, to consider the second and third prerequisites. (*Ibid.*)

---

[1] The petitioner must still obtain the consent of the Secretary of Homeland Security, which is in the Secretary's discretion. (§ 1101(a)(27)(J)(iii).)

4

In early December 2013, the court held a hearing to consider those issues. Shortly before that hearing, petitioner admitted to probation violations (the record is not clear as to what those were). At the hearing on remand, the court found petitioner satisfied the first prerequisite because he was in the custody of a state agency, but not the second or the third prerequisite.[2]

With respect to whether "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law" (§ 1101(a)(27)(J)(i)), the court held petitioner could not meet this prerequisite because he lived with his father, who did not abuse him. In reaching this conclusion, the court followed the Nebraska Supreme Court's decision in *In re Interest of Erick M.* (2012) 820 N.W.2d 639 (*Erick M.*) in holding that the requirement to show an inability to reunify with "1 or both" parents meant the petitioner had to prove he could not reunify with both parents, not just one. Alternatively, the court held that because petitioner's mother died seven years after abandoning him, the inability to reunify was not "due to" abandonment, but due to death.

The court also found it would be in petitioner's best interest to be returned to Mexico. Although the court acknowledged that petitioner had "lived the majority of his life in the United States," and that "[h]e appeared to have gotten his life back on the right track and graduated from high school with excellent grades," it found his criminal history demonstrated that he had "not been successful on probation and continue[d] to make poor choices in his life." The court specifically noted petitioner's unresolved drug problems. Petitioner's only family in Mexico is a brother living in Juarez, Mexico. Petitioner testified that his brother would not be able to provide for him, however, and

---

[2] Under the holding of *Leslie H. v. Superior Court* (2014) 224 Cal.App.4th 340, 351-352 (*Leslie H.*), "a minor alien adjudicated a delinquent, placed in juvenile hall, and committed upon release to ongoing child welfare agency supervision qualifie[s] under section 1101(a)(27)(J)(i) as a child in dependent, committed, or custodial care."

expressed concern that Juarez was "one of the most dangerous cities in the world." But the court found those concerns to be "speculative" and opined that an "equally compelling, yet speculative argument [is] that to the contrary, it would seem that a fresh start away from here might work to his benefit." The court speculated that petitioner's high school diploma would be a "useful tool" that "could open doors in Mexico for a job or even continuing his education at a college or university."

Petitioner petitioned this court for a writ of mandate and/or other appropriate relief, directing the trial court to enter favorable findings on the second and third prerequisites for SIJ status. The People have not appeared but have informed us by letter that they do not oppose the granting of the relief sought.

DISCUSSION

The SIJ statute sets forth a procedure for classification of certain aliens as special immigrants who have been declared dependent on a juvenile court or placed in the custody of a state agency (or someone appointed by a state agency). "Congress created this classification to protect abused, neglected, and abandoned unaccompanied minors through a process that allows them to become permanent legal residents. [Citation.] . . . [Citation.] A minor who obtains SIJ status may become a naturalized United States citizen after five years." (*In re Y.M.* (2012) 207 Cal.App.4th 892, 915.) "While the federal government has exclusive jurisdiction with respect to immigration [citations], including the final determination whether an alien child will be granted permanent status as an SIJ [citations], state juvenile courts" "are charged with making a preliminary determination of the child's dependency and his or her best interests, which is a prerequisite to an application to adjust status as a special immigrant juvenile." (*In re Mario S.* (N.Y.Fam.Ct. 2012) 954 N.Y.S.2d 843, 849 (*Mario S.*).)

6

The SIJ statute was enacted in 1990 and originally required a showing that the petitioner was dependent on a juvenile court, eligible for long-term foster care, and that it would not be in petitioner's best interest to return to his or her country of nationality. (3 Gordon et al., Immigration Law and Procedure (2014) § 35.09[1], p 35-35 (rel. 141-6/2013).) The SIJ statute has been amended twice since its enactment. (*Eddie E. supra*, 223 Cal.App.4th at p. 626.) "'In 1997 . . . Congress amended § 1101(a)(27)(J) to require that a court, in its order, determine that the juvenile (1) is eligible for long-term foster care *due to abuse, neglect, or abandonment* and (2) has been declared a dependent of a juvenile court *or committed or placed with a state agency*' [citations]. 'Under the 2008 amendment, the eligibility requirements . . . hinge primarily on a reunification determination. The amendment expanded eligibility to include juvenile immigrants whom a court has committed to or placed in the custody of an individual or a state-appointed entity — not just those whom a court has committed to or placed with a state agency or department . . . . Finally, Congress removed the requirement that a state juvenile court find that a juvenile is eligible for long-term foster care because of abuse, neglect, or abandonment. Instead, a court must find that reunification is not possible because of abuse, neglect, or abandonment.'" (*Mario S.*, *supra*, 954 N.Y.S.2d at pp. 848-849, italics added.)

Section 1101(a)(27)(J), currently defines a special immigrant juvenile as follows: "an immigrant who is present in the United States — [¶] (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; [¶] (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous

7

country of nationality or country of last habitual residence; and [¶] (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status . . . ."

"The consent determination made by the Secretary, through the [United States Citizenship and Immigration Services] District Director, is now 'an acknowledgement that the request for SIJ classification is bona fide.'" (3 Gordon et al., Immigration Law and Procedure § 35.09 at pp. 35-40 to 35-41.) As explained by a United States Citizenship and Immigration Services (USCIS) field memorandum, this means the SIJ benefit was not "'sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment.'" (Donald Neufeld, USCIS Acting Associate Dir. Domestic Operations, mem. to Field Leadership, Mar. 24, 2009.)

*Petitioner Satisfied the Second Prerequisite of the SIJ Statute Because His Mother Abandoned Him*

We first address whether petitioner had been abandoned by "1 or both" of his parents for purposes of the second prerequisite. The court held this language required petitioner to prove both of his parents abandoned him.

We begin our analysis with the observation that this holding runs contrary to a literal interpretation of the statute. "1 or both" is disjunctive. "The plain and ordinary meaning of the word 'or' is well established. When used in a statute, the word 'or' indicates an intention to designate separate, disjunctive categories." (*Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 30.) Under the plain reading of the statute, therefore, a petitioner may satisfy the second prerequisite by showing an inability to reunify with *one* parent due to abuse, neglect, abandonment, or a similar basis under state law. The majority of commentators and cases to address this issue have adhered to this literal interpretation. (See *H.S.P. v. J.K.* (N.J.Ct.App. 2014) 87A.3d 255, 265

8

[collecting commentators and cases].) Unless the literal interpretation results in absurdities, we are bound to apply it. (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 583 ["[J]udicial construction of unambiguous statutes is appropriate only when literal interpretation would yield absurd results"].)

We have found two cases that depart from this literal meaning, the first of which the trial court relied on here. The first is *Erick M.*, *supra*, 820 N.W.2d 639 from the Supreme Court of Nebraska, which interpreted the phrase to mean that if the petitioner had lived with both parents prior to the juvenile proceeding, reunification must be infeasible with both parents to qualify. (*Id.* at p. 647.) The court held that proof of one absent parent is not the end of the inquiry. "A petitioner must normally show that reunification with the other parent is also not feasible. [¶] But if a juvenile lives with only one parent when a juvenile court enters a guardianship or dependency order, the reunification component under § 1101(a)(27)(J) is not satisfied if a petitioner fails to show that it is not feasible to return the juvenile to the parent who had custody. This is true without any consideration of whether reunification with the absent parent is feasible because the juvenile has a safe parent to whose custody a court can return the juvenile. [¶] In contrast, if the juvenile was living with both parents before a guardianship or dependency order was issued, reunification with both parents is usually at issue. These varied results are all consistent with Congress' intent that SIJ status be available to only those juveniles who are seeking relief from parental abuse, neglect, or abandonment." (*Ibid.*, fns. omitted.)

To reach this result, the *Erik M.* court found the statutory language "1 or both" to be ambiguous for the following reason: "[b]ecause 'or' describes what a juvenile court must determine in the alternative, we could also reasonably interpret the phrase '1 or both' parents to mean that a juvenile court must find, depending on the circumstances, that *either* reunification with one parent is not feasible *or* reunification with both parents is not feasible." (*Erick M.*, *supra*, 820 N.W.2d at p. 644.) We find this

9

rationale a bit hard to follow, because that description mostly follows the statutory language. But apparently the court believed that in any given case the statute could only provide one means of satisfying the second prerequisite. In other words, the word "or" is ambiguous. We see no basis for that conclusion, however. As noted above, it is commonplace for statutes to provide alternative means of satisfying a condition using the disjunctive word "or." Here, the statute provides that a minor can satisfy the second prerequisite by showing that one parent is unfit, or by showing that both parents are unfit. Since there is no ambiguity, the inquiry should end there.[3] (*Simmons v. Ghaderi, supra*, 44 Cal.4th at p. 583).

Even if the statute could be deemed ambiguous, however, we find the *Erick M.* court's rationale for resolving that ambiguity as it did unpersuasive. After finding an ambiguity, the court reached what it termed "the better rule" (*Erick M., supra*, 820 N.W.2d at p. 648) by considering USCIS unpublished decisions in which abandonment by one or both parents resulted in a petitioner receiving SIJ status (*id.* at pp. 645-647, fns. 20, 29, 30, 36, 37).[4] We have reviewed those cases and find they do not support the

---

[3] Shortly before this opinion was filed, Division Five of the First Appellate District of the Court of Appeal, published *In re Israel O.* (Jan. 16, 2015, A142080) ___ Cal.App.4th ___ in which the court agreed with *Erick M.* to the extent that it found, for exactly the same reason, that the statute was ambiguous. ([*Id.* at p. 8].) The *Israel O.* court, however, went on to interpret the statute in precisely the manner we do here: a finding that one parent's abandonment of the petitioner was sufficient to satisfy the second prerequisite even if the juvenile was living with another parent in the United States. ([*Id.* at pp. 11-12].) It reached this result primarily based on its review of USCIS materials indicating that this is how USCIS interprets the statute. We agree with the result in *Israel O.*, but simply conclude, for the reasons stated above, that the statute is not ambiguous.

[4] (Citing *In re* [*Redacted*] (U.S. Dept. of Homeland Security, Citizenship and Immigration Serv. Mar. 15, 2011, No. [Redacted]) 2011 WL 7790423; *In re* [*Redacted*] (U.S. Dept. of Homeland Security, Citizenship and Immigration Serv. Feb. 26, 2010, No. [Redacted]) 2010 WL 3426795; *In re* [*Redacted*] (U.S. Dept. of Homeland Security, Citizenship and Immigration Serv., Oct. 13, 2009, No. [Redacted]) 2009 WL 6520647; *In*

10

*Erick M.* court's position. None of them discuss the pertinent issue: whether "1 or both" can be satisfied by a showing applicable to only one parent when there is another known parent. None of them involve a case where one parent was guilty of abuse, neglect, or abandonment, but another known parent was not.

More fundamentally, the *Erick M.* court's reliance on USCIS decisions betrays a misunderstanding of the relative roles of the state court and the USCIS in SIJ proceedings. It is not the state court's role to weed out applications based on a court's perception of the lack of good faith of a particular applicant. (See *Leslie H.*, *supra*, 224 Cal.App.4th at p. 351 ["A state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country"].) The task of weeding out bad-faith applications falls to USCIS, which engages in a much broader inquiry than state courts. Section 1101(a)(27)(J)(iii) specifically requires a petitioner to obtain the consent of the Department of Homeland Security to achieve SIJ status. The USCIS field leadership memorandum for officers implementing this requirement specifically requires them to determine the applicant's "bona fide." "This means that the SIJ benefit was not 'sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment.'" (Donald Neufeld, USCIS Act. Assoc. Dir. Domestic Operations, mem. to Field Leadership, *supra*.) Even if *Erick M.* had found a case in which the USCIS denied someone SIJ status on the basis that a fit parent was available (which it did

---

re [*Redacted*] (U.S. Dept. of Homeland Security, Citizenship and Immigration Serv., Oct. 30, 2009, No. [Redacted]) 2009 WL 6521113; *In re* [*Redacted*] (U.S. Dept. of Homeland Security, Citizenship and Immigration Serv., Nov. 30, 2009, No. [Redacted]) 2009 WL 6607581.)

11

not), it would not follow that this conclusion determines how *state* courts should fulfill their role because USCIS's charge is broader than ours.

Of the cases the *Erick M.* court relied on, the only case that even arguably supports its rationale is *In re* [*Redacted*], *supra*, 2009 WL 6521113. In our view, however, the case is not only distinguishable but only serves to highlight the disparate roles of the federal and state authorities in the SIJ process.

There, the petitioner was brought to the United States by her mother to reunify with her father. Sometime later, the father was deported. The petitioner had a guardian appointed, obtained the necessary state court findings, and then successfully petitioned for SIJ status. It later came to light, that the petitioner continued to live with her mother and never lived with the guardian. USCIS instituted revocation proceedings, revoked her status, and that order was affirmed on appeal. In the revocation proceeding, there was no evidence that the father or mother had abused, neglected, or abandoned the petitioner. The administrative court noted on appeal, "the Field Office Director found that the petitioner's continuous residence with her mother undermined her claim of abuse, abandonment, neglect, and non-viability of family reunification. [Citation.] Further, the Field Office Director determined that the record did not reveal the factual basis for the juvenile court's findings, and the evidence suggested that the dependency order was sought primarily for the purpose of obtaining lawful permanent resident status." (*In re* [*Redacted*], *supra*, 2009 WL 6521113.) This case is not on point because there was no evidence that either parent had abused, neglected, or abandoned the petitioner, and thus it does not speak to our situation, where one parent is unfit but another is not. But beyond that, it illustrates that it is the USCIS field director's role to assess whether the petition for SIJ status was brought for the right reasons and whether the petitioner merits an adjustment of status, not the state court's role.[5]

---

[5] As the *Erick M.* court noted, the USCIS cases it relied on are not considered binding precedent. (*Erick M.*, *supra*, 820 N.W.2d at p. 646.) We analyze them solely for

12

Thus, not only did the *Erick M*. court fail to identify an ambiguity in the statute, but its resolution of the ostensible ambiguity is unpersuasive.

The second case to employ a nonliteral interpretation of "1 or both" is *H.S.P.*, *supra*, 87 A.3d 255, which reached the same result as *Erick M*. Unlike the *Erick M*. case, however, the *H.S.P.* court made little effort to identify an ambiguity in the statute. Instead, it jumped straight into the legislative history, which it perceived as supporting its conclusion that both parents must have abused, neglected, or abandoned the petitioner. (*H.S.P.*, at p. 266.) That legislative history generally showed the purpose of the SIJ statute was to provide relief for abused, neglected, or abandoned children, "and to ensure that the juvenile court determination was not 'sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect.'" (*H.S.P.* at p. 266.) The court acknowledged, however, that "[t]here is no specific legislative history on the '1 or both' language." (*Id.* at p. 267.) After its review of the legislative history, the court concluded, "Thus, the legislative and administrative history of Subparagraph J shows two competing goals. Congress wanted to permit use of the SIJ procedure when necessary to prevent the return of juveniles to unsafe parents. Where such protection is unnecessary, however, Congress wanted to prevent misuse of the SIJ statute for immigration advantage." (*Id.* at p. 268.) It then concluded that interpreting "1 or both" to mean *both* better served those goals. "The contrary interpretation does not achieve both of Congress's goals. It would mean that a juvenile could apply for SIJ status, with its immigration advantages, even if that juvenile could be viably reunified with one parent who never abused, neglected, or abandoned the juvenile. Indeed, it would permit SIJ status even if that safe parent had raised the juvenile from birth, in love, comfort, and security, and even if reunification with the safe parent would not result in any further contact with the unsafe parent.

---

purposes of analyzing the *Erick M*. court's rationale.

13

Nothing in the legislative history of Subparagraph J supports such a broad interpretation." (*Id.* at p. 268.) Near the end of the decision, the court included one sentence that gave some recognition of the need to find an ambiguity in the statute: "Finally, that broad interpretation [i.e. the literal one] would render Subparagraph J's words 'or both' superfluous, because it would always be sufficient that 'reunification with 1 . . . of the immigrant's parents is not viable.'" (*Ibid.*)

Even more so than the *Erick M.* court, the *H.S.P.* court fundamentally misunderstood its role in the process. Of course the SIJ statute was not designed to provide citizenship to petitioners who are comfortably living with a loving, supportive parent. But it is USCIS's role to determine whether the petitioner has applied for SIJ status primarily for the purpose of obtaining relief from abuse, neglect, or abandonment, not the state court's role.

Less obvious, the same misunderstanding infects the *H.S.P.* court's argument that the statute is ambiguous because a literal reading renders "or both" superfluous. Why would a petitioner bother to show both parents are unfit due to abuse, neglect, or abandonment when showing that one is would suffice? Because showing both parents are unfit will be far more effective in proving to USCIS that the petition for SIJ status is brought in good faith. With the proper understanding of the relative roles of the state and federal government in mind, the words "or both" are not superfluous. Showing one parent is unfit due to abuse, neglect, or abandonment is the minimum requirement to meet the prerequisite, but showing both parents are unfit is more effective.

Additionally, the *Erick M.* and *H.S.P.* courts underestimated the impact the abandonment of one parent can have. As the present case amply illustrates, the abandonment by one parent, even if another parent is present, can cause a petitioner's life to tailspin out of control, as was the case here. Certainly, petitioner has presented a case from which a reasonable USCIS field director could conclude that petitioner has applied for SIJ status in good faith to obtain relief from his mother's abandonment. On the other

14

hand, a USCIS field director may determine that is not the case. The problem with the *Erick M.* and *H.S.P.* interpretation is that it completely forecloses the ability of USCIS to make that determination. Ultimately, immigration decisions are the purview of the federal government, not the state government. (*Leslie H.*, *supra*, 224 Cal.App.4th at p. 351 ["State courts play no role in the final determination of SIJ status or, ultimately, permanent residency or citizenship, which are federal questions"].) The *Erick M.* and *H.S.P.* courts improperly usurped that role.

Accordingly, we hold that the second prerequisite is to be interpreted literally: "1 or both" means one or both. A petitioner can satisfy this requirement by showing an inability to reunify with *one* parent due to abuse, neglect, abandonment, or a similar basis under state law.

*Mother's Death Did Not Render the Abandonment Ineffective*

Alternatively, the court held petitioner's inability to reunify with his mother was "due to" death, not abandonment. It would be a particularly parsimonious reading of the statute, however, to deny relief to a petitioner who had been fully abandoned just because his or her parents, by dint of circumstance, died after the abandonment. The Family Code provides that abandonment has occurred where "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (Fam. Code, § 7822, subd. (a)(3).) "The failure to provide identification, failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon." (*Id.*, subd. (b).) The facts here amply demonstrate that petitioner's mother permanently abandoned him. That she died only cemented the permanent abandonment already in place. As recounted above, the purpose of the SIJ statute is to provide relief from abuse, neglect, or abandonment. The deleterious effects of abandonment are not allayed by the parent's

15

death. Accordingly, we hold that where a parent, having abandoned a child, dies in that state of abandonment, the child's inability to reunify with that parent is still "due to" abandonment for purposes of the SIJ statute.

*It Was Not in Petitioner's Best Interests to Return to Mexico*

Finally, we reject the trial court's admittedly speculative rationale for determining that it was in petitioner's best interest to be returned to Mexico. In rejecting a similar rationale, another panel of our court recently stated, "The court based its finding on anecdotal impressions, untethered to any evidence in this case, that parents of troubled immigrant children may sometimes 'send their children back to Mexico to get them . . . out of the negative environment that has placed them in the juvenile court.'" (*Leslie H.*, *supra*, 224 Cal.App.4th at p. 352.) The trial court here made similar comments. The uncontradicted evidence is that petitioner has lived his entire life here, has family here, and has no one in Mexico to turn to. Further, the trial court's speculation about petitioner's high school degree being a useful tool in Mexico was inverted logic. The fact that petitioner has, by the court's description, turned his life around here only shows that petitioner may continue to benefit from the services he can receive here. The court's conclusion — that sending petitioner to a foreign country with no support at all is better than him remaining here — finds no support in either reason or evidence.

We add one final comment for the benefit of trial courts. We sympathize with a court's discomfort at the prospect of a petitioner obtaining citizenship when there is reason to doubt the petitioner's good faith. And although we have determined that the task of weeding out such applicants lies principally with the federal authorities, trial courts are not powerless. In a court's order making the findings required under the SIJ statute, the court can and should include findings of any relevant facts that the court deems pertinent to the federal government's inquiry. If a trial court finds the petitioner is

16

living comfortably with another parent, for example, it should say so in its order to ensure that that fact does not escape the notice of federal authorities.

## DISPOSITION

Let a peremptory writ of mandate issue commanding respondent Superior Court of Orange County to vacate its order of December 12, 2013, denying petitioner's application for SIJ status findings. The juvenile court is directed to enter a new and different order sustaining as of December 12, 2013, the requisite state court findings to enable petitioner to file his SIJ application with the appropriate federal authorities. Each party shall bear its own costs of this writ proceeding. Having served its purpose the order to show cause is discharged.


IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.


17