Filed 8/16/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| BIANKA M., a Minor, etc., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | S233757 |
| | ) | |
| THE SUPERIOR COURT OF | ) | Ct.App. 2/3 B267454 |
| LOS ANGELES COUNTY, | ) | |
| | ) | |
| Respondent; | ) | Los Angeles County |
| | ) | Super. Ct. No. BF052072 |
| GLADYS M., | ) | |
| | ) | |
| Real Party in Interest. | ) | |

At the age of 10, petitioner Bianka M., a native and citizen of Honduras, entered the United States unaccompanied and without prior authorization. After a brief detention by federal authorities, she was reunited with her mother, who had left Honduras for the United States many years before. In a family court action naming her mother as the respondent, Bianka asked for an order placing her in her mother's sole custody. She also asked the court to issue findings that would enable her to seek "special immigrant juvenile" status under federal immigration law—a classification that permits immigrant children who have been abused, neglected, or abandoned by one or both parents to apply for lawful permanent residence while remaining in the United States. (See 8 U.S.C. § 1101(a)(27)(J); Code Civ. Proc., § 155.) She alleges that her father, who resides in Honduras, has

1

abandoned her and that it is not in her interest to return to her home country. Although she has notified her father of the action, he has taken no steps to participate.

The superior court denied Bianka's requests. The court concluded it could not issue either a custody order or findings relevant to special immigrant juvenile status unless Bianka first established a basis for exercising personal jurisdiction over her father and joined him as a party to the action. The Court of Appeal upheld the ruling. We granted review to determine whether the superior court properly required the child's nonresident, noncustodial parent to be joined as a party in her parentage action seeking special immigrant juvenile findings. We also consider whether, as certain language in the Court of Appeal's opinion might suggest, the child's perceived immigration-related motivations for filing the action have any bearing on whether the action may proceed. Our answer to both questions is no. Provided that the absent parent has received adequate notice, the action may proceed even if the parent is beyond the personal jurisdiction of the court and cannot be joined as a party. The action may also proceed regardless of whether the court believes it was filed primarily for the purpose of obtaining the protections from abuse, neglect, or abandonment that federal immigration law provides. We reverse the judgment of the Court of Appeal and remand for further proceedings.

## I.

### A.

The facts are taken from Bianka's petition and supporting documentation. Bianka was born in 2002 in Honduras to Gladys M. In 2005, Gladys moved to the United States in search of better employment opportunities, leaving Bianka in the care of an older daughter. Despite the physical distance between them, Bianka

2

and Gladys maintained a close relationship.  Gladys frequently called to check on Bianka's well-being and sent half of her weekly income for Bianka's care.

Bianka's father is Jorge L., a resident of Honduras.  Gladys and Jorge had a 15-year relationship but were never married.  During their relationship, the pair had four children together, of whom Bianka is the youngest.  Their relationship ended around the time Bianka was born, and Jorge has refused to develop a relationship with Bianka.  According to Bianka and Gladys, Jorge has rejected several desperate pleas for financial support.  Gladys also claims that Jorge often physically abused her, once using the blunt end of a machete to beat her while she was pregnant with Bianka.

When Bianka left Honduras for the United States at the age of 10, she sought to escape the rampant violence in her home country and reunite with her mother.  Bianka asserts that there are no longer relatives in a position to take care of her in Honduras.  Federal immigration officials initially detained Bianka at the border, but she was later released to Gladys's custody.  Bianka now resides with Gladys in Los Angeles.

**B.**

Bianka initiated this action under the Uniform Parentage Act (UPA; Fam. Code, § 7600 et seq.), the statutory framework governing judicial determinations of "the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations." (Fam. Code, § 7601, subd. (b).)  In a petition naming Gladys as the sole respondent, Bianka asked the court to find a legal parent-child relationship between her and Gladys and to award Gladys sole legal and physical custody.  (*Id.*, §§ 3006, 3007.)  In addition, Bianka asked the court to make the

findings necessary to apply for classification as a special immigrant juvenile (SIJ) under federal immigration law.[1]

Congress first established the SIJ classification in 1990 to provide relief to immigrant children who were eligible for long-term foster care and whose interests would not be served by returning to their country of origin. (Immigration Act of 1990, Pub.L. No. 101–649 (Nov. 29, 1990) 104 Stat. 4978.) Congress has since amended the provisions governing SIJ status several times. In the most recent amendment, passed in 2008, Congress eliminated the requirement that the child be found eligible for foster care. (William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub.L. No. 110–457, § 235(d)(1)(A) (Dec. 23, 2008), 122 Stat. 5044.) Under the law as amended, a child is eligible for SIJ status if: (1) the child is a dependent of a juvenile court, in the custody of a state agency by court order, or in the custody of an individual or entity appointed by the court; (2) the child cannot reunify with one or both parents due to abuse, neglect, abandonment, or a similar basis found under state law;[2] and (3) it is not in the child's best interest to return to his or her home country or the home country of his or her parents. (8 U.S.C. § 1101(a)(27)(J)(i)–(ii).) Under federal immigration

---

[1]    Before Bianka filed her petition, Gladys had filed a similar parentage action naming Jorge as respondent, and requested orders granting similar relief. Jorge did not respond when Gladys served the petition on him, and Gladys asked that the petition be dismissed due to the court's lack of personal jurisdiction over Jorge. The court dismissed the petition without prejudice.

[2]    Courts of Appeal have interpreted this prong of the statute to apply both to juveniles who cannot reunify with either parent and to juveniles who can reunify with one parent but not the other. (See, e.g., *In re Israel O.* (2015) 233 Cal.App.4th 279, 291; *Eddie E. v. Superior Court* (2015) 234 Cal.App.4th 319, 327.)

4

regulations, each of these findings is to be made in the course of state court proceedings.  (8 C.F.R. § 204.11(c)(3)–(6), (d)(2)(i)–(iii) (2009).)**3**

SIJ applications are reviewed by the United States Citizenship and Immigration Service (USCIS), an agency within DHS.  (See 8 U.S.C. § 1101(a)(27)(J)(iii) [requiring DHS's consent to SIJ classification]; 8 C.F.R. §§ 100.1 (2009) [delegating authority under the Immigration and Nationality Act (8 U.S.C. § 1101 et seq.) to USCIS and other federal agencies], 103.2(a)(7)(i) (2016) [discussing USCIS's adjudication of benefit requests, which includes the primary form for SIJ status].)  Once granted, SIJ status permits a recipient to seek lawful permanent residence in the United States, which, in turn, permits the recipient to seek citizenship after five years.  (See 8 U.S.C. §§ 1255, 1427.)

To provide a basis for SIJ-eligible children to secure the necessary state court findings, the California Legislature in 2014 enacted Code of Civil Procedure section 155 (Stats. 2014, ch. 685, § 1).  Section 155 confers jurisdiction on every superior court—including its juvenile, probate, and family court divisions—to issue orders concerning the findings relevant to SIJ status.  (Code Civ. Proc., § 155, subd. (a).)  The statute further provides that superior courts "shall issue the order" if "there is evidence to support [SIJ] findings, which may consist of . . . a declaration by the child who is the subject of the petition."  (*Id.*, § 155, former subd. (b)(1).)  The statute has since been amended to provide that the evidence may consist solely of the child's declaration.  (*Ibid.*, as amended by Stats. 2016, ch. 25, § 1, p. 916.)

---

**3**     The implementing regulations, which have not been updated in light of statutory changes, still list long-term foster care as an eligibility requirement despite Congress's decision to eliminate that requirement in 2008.  (8 C.F.R. § 204.11(c)(4)–(5) (2009).)

5

In the declaration attached to her petition, Bianka has asserted that her father, Jorge, had abandoned her before birth and that there are no other relatives available to take care of her in Honduras. In a separate declaration, Gladys has similarly asserted that Jorge is Bianka's father and had abandoned her before birth. Gladys attached to her declaration a copy of Bianka's birth certificate listing Jorge as Bianka's father. Bianka asks the court to find, among other things, that she cannot reunify with her father because of his abandonment and that it is not in her best interest to return to Honduras.

## C.

After filing her petition, Bianka requested the appointment of a guardian ad litem to represent her interests; she served both Gladys and Jorge with the application via mail. (Fam. Code, § 7635, subd. (a).) Bianka's counsel also notified Jorge by telephone, in Spanish, and informed him of the hearing date. Bianka later submitted a request for order, asking the court to grant sole custody to Gladys and to issue findings relevant to SIJ eligibility. Bianka's counsel served Jorge by mail with a copy of the petition, the proposed order of custody, which contained the SIJ findings, and supporting documents. Counsel again called Jorge to advise him of the upcoming hearing on the request for order. Jorge neither responded to the petition nor participated in the hearing, which took place more than a month later.

Following the hearing, the superior court denied Bianka's request for order on the ground that it could not be adjudicated without joining Jorge as a party to the action. The court reasoned that joinder was required because Bianka's request to award sole custody to Gladys affected Jorge's potential custody rights. The court also concluded that Jorge's joinder was required in order to make the requested SIJ finding that reunification with Jorge was not viable because of his abandonment. The court acknowledged that there was no evidence to indicate that

6

it had personal jurisdiction over Jorge, who lives in Honduras. The court nevertheless denied Bianka's request "without prejudice to further application after [Jorge] has been properly joined, personal jurisdiction issues have been resolved and a determination of parentage is made."

Bianka sought appellate review by petition for writ of mandate. The Court of Appeal denied the petition. As an initial matter, the court held that Bianka's request for order was premature because the superior court had yet to determine Gladys's parentage, a prerequisite to an order granting custody to Gladys. But because the record evidence suggests that there is unlikely to be a dispute regarding whether Gladys is in fact Bianka's mother, the court went on to address the merits of the superior court's ruling on joinder.

The Court of Appeal observed that Bianka's petition is unusual in that it involves an uncontested parentage action between a child and her natural mother. Although nothing in the statutory scheme forbids such an action, the Court of Appeal held that the superior court was within its discretion to insist that Jorge be joined as a party. The Court of Appeal reasoned that "[b]y requesting an order giving her mother sole legal and physical custody predicated on Jorge's abuse and abandonment, Bianka is impliedly asking the court to adjudicate Jorge's custody rights (if any)," as well as his status as Bianka's father. The appellate court noted that the superior court was "understandably reluctant" to make such findings in an action to which Jorge was not a party. The Court of Appeal also concluded that the superior court acted within its discretion to attempt to give Jorge "a meaningful opportunity" to refute Bianka's allegation that Jorge "abandoned" her—a term the appellate court understood to refer to whether Jorge had left Bianka "without provision for reasonable and necessary care or supervision." (Fam. Code, § 3402, subd. (a).) Finally, the Court of Appeal asserted that "an order containing SIJ findings will not be useful to Bianka unless it is issued in the

7

context of a bona fide custody proceeding," as opposed to one "brought only to obtain SIJ findings." Without deciding whether Jorge's joinder was mandatory, the Court of Appeal held that under the circumstances, where Bianka's father's identity and whereabouts are known, the superior court did not abuse its discretion in requiring Jorge to be joined under the permissive joinder provision of rule 5.24(e)(2) of the California Rules of Court. We granted Bianka's petition for review.[4]

## II.

## A.

The primary issue in this case concerns the application of the rules governing when an absent person or entity must be joined as a party in a civil action. Although the issue arises in the context of what the Court of Appeal termed a "novel" parentage suit, the governing rules are familiar.

In any parentage action under the UPA, there may be multiple parties involved, including the child and his or her "natural," "presumed," and "alleged" parents. (Fam. Code, §§ 7601, 7635.) The term "natural" parent refers to an individual whose status as a nonadoptive parent is recognized under the UPA (*id.*, § 7601, subd. (a)); that status may be established, for example, by proof that the parent gave birth to the child. (*Id.*, § 7610, subd. (a).) An individual is a "presumed" parent if, for example, the child was born during the individual's marriage to the child's natural mother, or if the individual accepted the child into their home and held the child out as a natural child. (*Id.*, § 7611, subds. (a), (d); see *id.* subds. (b)–(c), (e)–(f) [enumerating other categories of presumed parents].)

---

[4] Since respondent did not file a brief in this case, we invited L. Rachel Lerman to file an amicus curiae brief in place of a respondent's brief. We thank Ms. Lerman for her assistance.

8

All other individuals who may be parents, but whose maternity or paternity has neither been established nor presumed, are referred to as " 'alleged' " parents. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15.)

By statute, all three categories of parents are entitled to notice of the parentage action and an opportunity to be heard, if they so desire. (Fam. Code, §§ 7635, subd. (b), 7666.) Notice must be given at least 10 days before the date of the proceeding. (*Id.*, § 7666, subd. (a).) Proof of the notice must be filed with the court before it considers the petition. (*Ibid.*) The method of giving notice must comply with the requirements for service of process in a civil action in this state, which permits service by, inter alia, first-class mail with acknowledgment of receipt. (*Ibid.*; see Code Civ. Proc., §§ 415.10–415.40.) In a custody matter involving an individual outside of California, the relevant statute provides that notice "may be given in a manner prescribed by the law of this state for service of process or by the law of the state in which the service is made. Notice must be given in a manner reasonably calculated to give actual notice . . . ." (Fam. Code, § 3408, subd. (a).)[5]

The UPA does not, however, mandate that all parents be made parties to the action. As a rule, of course, a court may adjudicate the rights and responsibilities only of the parties before it; a parent therefore must be named as a party if the parentage action seeks to establish a legal relationship between that parent and the child. (See, e.g., *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1227 (*Gorham*); cf. *Kulko v. California Superior Court* (1978) 436 U.S. 84, 91.)

---

[5] As of 2016, the California Rules of Court also require a person requesting a SIJ order to serve notice of the hearing on the request, along with "a copy of the request and supporting papers," on all "alleged, biological, and presumed parents of the child who is the subject of the request." (Cal. Rules of Court, rule 5.130(c).) Parents are entitled to "file and serve a response." (*Id.*, rule 5.130(d).)

9

Beyond that basic background rule, however, the UPA imposes no general requirement of parental participation:  While a child who is 12 or older "*shall . . . be made a party to the action*," the statute provides that parents—whether natural, presumed, or alleged—and younger children "*may* be made parties," depending on the circumstances.  (Fam. Code, § 7635, subds. (a), (b), italics added.)

In civil litigation generally, the question whether a person must be joined as a party to a suit is governed by the compulsory joinder statute, section 389 of the Code of Civil Procedure.  Subdivision (a) of that statute states:  "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."  (Code Civ. Proc., § 389, subd. (a).)  If such a person (sometimes called a "necessary" party) cannot be joined, subdivision (b) requires the court to consider "whether in equity and good conscience" the suit can proceed without the absent party, or whether the suit should instead be dismissed without prejudice, "the absent person being thus regarded as indispensable."  (*Id.*, subd. (b).)  To make that judgment, the statute instructs the court to consider several factors, including:  (1) the extent to which "a judgment rendered in the person's absence might be prejudicial to him or those already parties"; (2) "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided"; (3) "whether a judgment rendered in the person's absence

10

will be adequate"; and (4) "whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder." (*Ibid.*)

To guide implementation of these general joinder principles in the family law context, the Judicial Council has promulgated rule 5.24 of the California Rules of Court. As relevant here, rule 5.24, under the heading "Mandatory joinder," provides that a court must order that a person be joined as a party to a family court proceeding "if the court discovers that person has physical custody or claims custody or visitation rights with respect to any minor child of the marriage, domestic partnership, or to any minor child of the relationship." (Cal. Rules of Court, rule 5.24(e)(1)(A).) Under the heading "Permissive joinder," rule 5.24 provides that a court may order that a person be joined as a party "if the court finds that it would be appropriate to determine the particular issue in the proceeding and that the person to be joined as a party is either indispensable for the court to make an order about that issue or is necessary to the enforcement of any judgment rendered on that issue." (*Id.*, rule 5.24(e)(2).) "In deciding whether it is appropriate to determine the particular issue in the proceeding, the court must consider its effect upon the proceeding, including: [¶] (A) Whether resolving that issue will unduly delay the disposition of the proceeding; [¶] (B) Whether other parties would need to be joined to make an effective judgment between the parties; [¶] (C) Whether resolving that issue will confuse other issues in the proceeding; and [¶] (D) Whether the joinder of a party to determine the particular issue will complicate, delay, or otherwise interfere with the effective disposition of the proceeding." (*Ibid.*)

Because the determination of whether a person or entity must be joined as a party to a civil action is a case-specific inquiry that " 'weighs "factors of practical realities and other considerations," ' " a trial court's ruling on joinder is reviewed

11

for abuse of discretion.  (*TG Oceanside, L.P. v. City of Oceanside* (2007) 156 Cal.App.4th 1355, 1366.)

**B.**

In this parentage action, Bianka seeks to establish a parent-child relationship with her mother, Gladys, as well as SIJ findings concerning, among other things, her alleged father, Jorge.  By statute, she was required to notify Jorge of the pendency of the action, and she complied with this requirement by mailing her petition and supporting documents to him and following up by telephone.  Although the Court of Appeal suggested in passing that the notice was inadequate because it did not specifically alert Jorge to Bianka's request for SIJ findings, the record reflects that Bianka in fact did inform Jorge of her intent to seek such findings, including a finding that he had abandoned her.  Although the specific factual allegations supporting Bianka's claims were not included in her petition or request for order, they were included in the attached proposed order, as well as Bianka's and Gladys's declarations.  All of these documents, which were served on Jorge more than a month before the hearing, identify with adequate specificity the nature of the findings Bianka seeks from the superior court.

Despite being notified of the action, however, Jorge has taken no steps to participate.  The question is whether Bianka must nevertheless join Jorge as a party in order to proceed.  The superior court held that she must—even though the court also acknowledged that the record contains no basis for exercising personal jurisdiction over Jorge, who resides out of the country.  The Court of Appeal upheld the ruling on alternative grounds, concluding that the superior court acted within its discretion in ordering Jorge's joinder under the permissive joinder provision of rule 5.24(e)(2) of the California Rules of Court.  We conclude that both courts erred.

12

**1.**

Under the compulsory joinder statute, the basic rule is that, " '[w]henever feasible, the persons materially interested in the subject of an action . . . should be joined as parties so that they may be heard and a complete disposition made.' " (*Countrywide Home Loans, Inc. v. Superior Court* (1999) 69 Cal.App.4th 785, 793; see Code Civ. Proc., § 389, subd. (a).) But if it is not feasible to join a necessary person as a party—for example, because that person is beyond the personal jurisdiction of the court—then the court must proceed to consider whether, "in equity and good conscience," the action should proceed in that person's absence. (Code Civ. Proc., § 389, subd. (b).) If the person is found to be essential, or "indispensable," to the action, then the action must be dismissed. (*Ibid.*)

In a family law action, the mandatory joinder provision of rule 5.24(e) of the California Rules of Court identifies one category of persons who, by definition, are materially interested in the action and are therefore necessary parties: those who have physical custody of the child or make a claim to custody or visitation after being served with notice of the pending action. (Cal. Rules of Court, rule 5.24(e)(1)(A).) A person who claims custody or visitation rights is entitled to join himself or herself to the proceeding (*id.*, rule 5.24(c)(2)), and by the very fact of participation in the proceeding may consent to the court's exercise of jurisdiction (see, e.g., *In re Marriage of Torres* (1998) 62 Cal.App.4th 1367, 1380).

Here, however, after receiving notice of Bianka's action, Jorge has made no claim to custody or visitation rights, much less participated in the proceeding in any manner that could be interpreted as consent to the court's jurisdiction. Thus, as the superior court itself observed, there is no clear basis on which the court could exercise personal jurisdiction over Jorge. It is therefore not feasible to join

13

him. And if it is not feasible to join Jorge as a party because he is beyond the court's personal jurisdiction, then the proper course is not simply to order that Jorge be joined anyway. Rather, as a general rule, when it is not feasible for an interested person to be joined, the law instructs the court to consider whether, "in equity and good conscience," the suit may proceed in the person's absence. (Code Civ. Proc., § 389, subd. (b).)[6]

Although the superior court in this case did not cite Code of Civil Procedure section 389 or expressly address any of the section 389 factors, the court's reasoning suggests it believed that Jorge is not only a "necessary" but an "indispensable" party—to use the usual section 389 terminology—because Bianka's action unavoidably requires adjudication of Jorge's parental rights and responsibilities. The premise is faulty. Bianka asks for three things in this

---

[6] Code of Civil Procedure section 389, by its terms, refers to the joinder of a person who, as relevant here, "claims an interest relating to the subject of the action." (Code Civ. Proc., § 389, subd. (a).) Rule 5.24 of the California Rules of Court similarly refers to the joinder of "[a] person who claims or controls an interest in any matter subject to disposition in the proceeding." At oral argument, the Attorney General suggested that by failing to respond to the notice of Bianka's action, Jorge may have already provided an adequate indication that he does not "claim[] an interest" in the subject matter of the action. (Cf. *Hartenstine v. Superior Court* (1987) 196 Cal.App.3d 206, 222 [rejecting an argument that the State of California's interest in enforcing its laws required its joinder, emphasizing that California had not claimed an interest in the action]; *U.S. v. Bowen* (9th Cir. 1999) 172 F.3d 682, 689 ["Here, [the third party] was aware of this action and chose not to claim an interest. That being so, the district court did not err by holding that joinder was 'unnecessary.' "]; but see *Tell v. Trustees of Dartmouth College* (1st Cir. 1998) 145 F.3d 417, 419 and fn. 2 [interpreting identical phrase in federal joinder rule to mean "nothing more than appears to have such an interest," and holding that a third party may fit this description even if it remains silent].) We will, however, assume without deciding that Jorge's silence is not necessarily dispositive, and proceed to consider the remaining elements of the joinder analysis.

14

proceeding: (1) the establishment of a legal mother-child relationship with Gladys; (2) an award of sole legal and physical custody to Gladys; and (3) findings relevant to SIJ status, including findings concerning the prospect of reunification with Jorge. Certainly Jorge's participation is not essential for the court to determine the existence of a mother-child relationship between Bianka and Gladys. And although Jorge is certainly entitled to be heard on the remaining two matters if he chooses, he is not indispensable to their resolution.

To begin with, Jorge is not necessary—much less indispensable—to the resolution of Bianka's request that sole custody be awarded to Gladys. Such an award would impose no obligation on Jorge, nor is Jorge's participation otherwise needed for full consideration of whether relief should be granted. Determinations about the custody of children are to be made based on a determination of the child's best interests. (Fam. Code, §§ 3011, 3022.) In making that determination, the court must consider, among other relevant factors, the health, safety, and welfare of the child; any history of abuse by one parent against the child or the other parent; the amount and nature of the existing contact between the child and parents; and the habitual use of controlled substances or alcohol by either parent. (*Id.*, § 3011, subds. (a)–(d).) Here, the superior court essentially already conducted this inquiry; the court found that Bianka "is very happy living with Mother and she is thriving in school." The court further found that there was a "lack of available relatives to care for her" in Honduras.

The superior court's primary concern was that awarding sole custody to Gladys would effectively terminate any parental rights Jorge might wish to assert, and therefore should not be done in Jorge's absence. But Jorge was given an opportunity to assert those rights in response to the notice of the pendency of the proceeding, and he did not do so. Had he asserted an interest in custody or visitation of Bianka, he would have been entitled to participate in the proceeding

15

as a party.  (Cal. Rules of Court, rule 5.24(e)(1)(A).)  But when a nonresident parent chooses not to assert parental rights or otherwise participate in the proceeding, there is no bar to adjudicating the rights of those parties who are present.  It is by now established that a court may award sole custody to one parent even if the other parent (alleged or otherwise) is outside the court's personal jurisdiction and does not participate as a party, provided the absent parent receives notice of the proceeding and an opportunity to be heard.  (See *In re Marriage of Leonard* (1981) 122 Cal.App.3d 443, 459.)  Were it otherwise, the nonresident parent would have an effective veto over the adjudication of parental custody rights in the minor's best interests.  (See *id.* at pp. 457–458.)  And to the extent the courts below were concerned that the award of sole legal and physical custody to Gladys would effectively terminate any parental rights that Jorge might *later* wish to claim, the law is to the contrary.  (See *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 958 ["an award of sole legal and sole physical custody of a child to one parent does not serve to 'terminate' the other's parental rights or due process interest in parenting"]; see also Fam. Code, § 3088 ["An order for the custody of a minor child entered by a court in this state or any other state may . . . be modified at any time to an order for joint custody in accordance with this chapter."].)

        We turn, then, to the matter of the SIJ findings.  Consistent with the federal statute and section 155 of the Code of Civil Procedure, Bianka asked the superior court to find that (1) she is in the court-ordered custody of Gladys; (2) she cannot reunite with her alleged father, Jorge, due to his abandonment; and (3) it is not in her best interest to return to Honduras.  (See 8 U.S.C. § 1101(a)(27)(J).)  Of these findings, the record makes clear that neither the first nor the last requires Jorge's participation as a party; indeed, although the court expressed some misgivings about making the finding in Jorge's absence, the superior court has already found

16

that it is not in Bianka's best interest to be returned to Honduras, given "both the overall violence of her city and the lack of available relatives to care for her." Both courts below, however, concluded that Jorge must be joined as a party before the court may make findings about whether reunification with Jorge is not viable due to abandonment. In support of that conclusion, they offered two reasons.

First, the courts below appeared to believe that Bianka, by seeking findings relevant to SIJ status, is also seeking the equivalent of a parentage determination under the UPA concerning Jorge. Bianka, the Court of Appeal reasoned, "has placed Jorge's paternity squarely at issue by requesting an order containing a factual finding that *her father* abandoned her." If, as the courts appeared to believe, Bianka were seeking to establish a father-child relationship with Jorge under the UPA, then, as a matter of due process, she would be required to join her alleged father as a party to the action. (*Gorham*, *supra*, 186 Cal.App.4th at p. 1227.) But Bianka has not sought an order establishing a father-child relationship under the UPA, nor has she asked the court to grant Jorge parental rights or to order him to fulfill parental responsibilities. Bianka has instead simply asked the court to make a finding of fact: that reunification with her alleged father is not viable because of abandonment. Standing alone, that factual finding carries with it no necessary implications about Jorge's parental rights or responsibilities beyond what his nonparticipation in the litigation has already demonstrated—that is, that he has not asserted an interest in, or right to, the physical or legal custody of Bianka. There is no due process bar to issuing such a finding in Jorge's absence.

Second, the courts below cited the potential prejudice to Jorge if the finding is made in his absence. It is, the superior court noted, only a short step from finding that Jorge is Bianka's father to concluding that Jorge must assume greater responsibility for her support. The court also expressed concern about the finding

17

of abandonment, emphasizing that Jorge should be given an adequate opportunity to rebut the allegations. Bianka argues these concerns are overstated: She has not sought child support in this case, nor is it clear that it would be feasible for her to seek child support from Jorge, who is beyond the court's jurisdiction. Any decision issued in Jorge's absence could not bind him in any event. (*In re Wren* (1957) 48 Cal.2d 159, 163 ["It is the general rule that a judgment may not be entered either for or against a person who is not a party to the proceeding, and any judgment which does so is void to that extent."].) And while both the superior court and Court of Appeal were certainly correct to be concerned about potential prejudice to Jorge and his opportunity to respond to the allegations of abandonment, Jorge was notified of the allegations and had the opportunity to respond if he so chose; he did not, however, take any steps to participate in the pending proceeding.

Ultimately we need not decide here whether the courts' concerns about prejudice would justify Jorge's joinder as a necessary party if it were feasible to join him. We instead assume, without deciding, that Jorge is a necessary party as to the SIJ finding of abandonment. Because Jorge's joinder is not feasible, the central question under the mandatory joinder statute is whether the court can, "in equity and good conscience," make the finding in Jorge's absence. Under section 389, subdivision (b), the potential prejudice that may flow from a judgment rendered in Jorge's absence must be weighed alongside other factors: whether the prejudice can be lessened by the shaping of relief; whether a judgment rendered in Jorge's absence will be adequate; and, as particularly important here, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. (Code Civ. Proc., § 389, subd. (b).)

Although the superior court did not squarely address the last question, the answer is no: Bianka has no way to obtain a state court finding on the matters

18

relevant to an application for SIJ status, as section 155 of the Code of Civil Procedure entitles her to do, other than to ask the state court for the finding. There is no available alternative forum that could provide the relief she seeks. To conclude that the state court finding cannot be made in Jorge's absence is therefore effectively to say that Jorge, by failing to assert any right to custody or visitation of Bianka in this proceeding, can essentially bar Bianka from seeking relief premised on the very fact of his abandonment. While the potential prejudice to Jorge is, at this point, necessarily speculative, the prejudice to Bianka's legal position is immediate and unavoidable. To foreclose suit under these circumstances would risk defeating Congress's apparent aim in extending relief to immigrant children who have been abandoned by their parents, as well as the Legislature's aim in providing a jurisdictional basis for superior courts to issue the type of findings Bianka has requested. (See Code Civ. Proc., § 155, subd. (a)(1).)

In the end, considerations of "equity and good conscience" point in one direction. (Code Civ. Proc., § 389, subd. (b).) If, as the superior court asserts, it is not feasible to join Jorge as a party, the relevant findings can be made in Jorge's absence.

## 2.

The permissive joinder rule, rule 5.24(e)(2) of the California Rules of Court, on which the Court of Appeal relied as an alternative basis for upholding the superior court's judgment, does not change the analysis. That rule states that a court may order that a person be joined to a proceeding if it finds that it would be appropriate to determine a particular issue in the proceeding and the court finds that the person "is either indispensable for the court to make an order about that issue or is necessary to the enforcement of any judgment rendered on that issue." (Cal. Rules of Court, rule 5.24(e)(2).) All of this appears to presuppose that joinder is, in fact, feasible. The rule does not expressly address what should

19

happen when joinder is infeasible because, for example, the person to be joined is beyond the court's jurisdiction. In the absence of any more specific direction, the Rules of Court make clear that the ordinary rules relating to joinder of parties in civil cases apply. (*Id.*, rule 5.24(a)(1).) Those rules, as noted, do not authorize a court to order joinder when it is not feasible to join the nonparty and when the nonparty is not indispensable to the action. In any event, even where rule 5.24(e)(2) does apply, it directs courts to consider, among other things, whether "the joinder of a party to determine the particular issue will complicate, delay, or otherwise interfere with the effective disposition of the proceeding." (*Id.*, rule 5.24(e)(2)(D).) Here, because Jorge is beyond the court's jurisdiction, requiring his joinder would not only "complicate" proceedings, but would likely end them altogether.

The Court of Appeal did briefly acknowledge this problem, but suggested there may be a workaround: Jorge could stipulate to parentage, which would constitute a general appearance and establish the court's personal jurisdiction over him. The court did not, however, consider what would happen if Jorge refused. For reasons already explained, the law does not condition Bianka's ability to proceed with her suit on Jorge's consent to submit to the jurisdiction of the superior court.

**III.**

We now turn to a second issue raised by the Court of Appeal's decision. In its opinion, the Court of Appeal expressed concern that findings issued in the context of an uncontested custody proceeding would not be useful to Bianka's SIJ application in any event. The court pointed to an excerpt from a 1998 House of Representatives conference report, a USCIS memorandum citing the same report, and a 2011 proposed rule (yet to be finalized), all of which contain language suggesting that USCIS will approve SIJ status only when the findings are issued in

20

bona fide proceedings, meaning actions that are sought to obtain relief from abuse, neglect, or abandonment, and not primarily to obtain immigration relief. (See H.R.Rep. No. 105–405, 1st Sess., p. 130 (1997); USCIS, mem. on Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions (Mar. 24, 2009), superseded by USCIS Policy Manual, vol. 6, pt. J, ch. 2, D.5. (May 23, 2018); 76 Fed. Reg. 54978, 54985 (Sept. 6, 2011).) The court suggested that any findings issued in this case are unlikely to meet this standard, reasoning that Bianka had not demonstrated a practical need to establish her mother's sole custody and must therefore be primarily motivated by a desire to obtain SIJ findings.

Reading this passage as effectively a secondary basis for upholding the superior court's denial of her requested order, Bianka urges us to make clear that a court cannot deny a child's request for SIJ findings on the basis of its conclusion that the findings are the child's central motivation in filing the action. As it happens, the Legislature has already supplied the clarification Bianka seeks. Shortly after the Court of Appeal issued its decision in this case, the Legislature in 2016 amended Code of Civil Procedure section 155 to make clear that a court must issue findings relevant to SIJ status, if factually supported, regardless of its assessment of the child's perceived motivations in invoking the court's jurisdiction: "The asserted, purported, or perceived motivation of the child seeking classification as a special immigrant juvenile shall not be admissible in making the findings under this section. The court shall not include nor reference the asserted, purported, or perceived motivation of the child seeking classification as a special immigrant juvenile in the court's findings under this section." (Code Civ. Proc., § 155, subd. (b)(2), as amended by Stats. 2016, ch. 25, § 1.)

Even setting aside this recent amendment to Code of Civil Procedure section 155, we would agree with Bianka that a conclusion that a proceeding is

21

primarily motivated by a desire to secure SIJ findings is not a ground for declining to issue the findings. Certainly no such qualification has ever appeared in section 155; since its enactment, that provision has made clear that a superior court "shall" issue an order containing SIJ findings if there is evidence to support them. (Code Civ. Proc., § 155, subd. (b)(1).) The enactment of section 155 reflects legislative recognition that for some immigrant children, effective relief from abandonment and immigration status may be intertwined. Nor, for that matter, does such a "primary motivation" qualification appear in either the federal statute governing the SIJ classification or its implementing regulations. As a practical matter, such a requirement would foreclose a considerable number of children from securing the state court findings necessary to apply for immigration relief, even though they meet the stated statutory criteria. Regardless of whether USCIS chooses, as a policy matter, to employ additional criteria in evaluating applications for SIJ status, we agree with the Courts of Appeal that "[a] state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country." (*Leslie H. v. Superior Court* (2014) 224 Cal.App.4th 340, 351; *In re Israel O.*, *supra*, 233 Cal.App.4th at p. 289; *Eddie E. v. Superior Court*, *supra*, 234 Cal.App.4th at p. 329; see *id.* at p. 331.) A child's immigration-related motivations for seeking state court findings bear no necessary relationship to his or her need for relief from a parent's abuse, neglect, or abandonment.

## IV.

The judgment of the Court of Appeal is reversed.

KRUGER, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
CHIN, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
McCONNELL, J.*

---

\* Administrative Presiding Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Bianka M. v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 245 Cal.App.4th 406
**Rehearing Granted**

_____

**Opinion No.** S233757
**Date Filed:** August 16, 2018

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Holly J. Fujie

_____

**Counsel:**

Irell & Manella, Miller Barondess, Joshua C. Lee, Emily A. Sanchirico, David A. Schwarz, Stephen A. Rossi, Meiqiang Cui; Public Counsel, Judith London; Immigrant Defenders Law Center, University of Baltimore School of Law, Immigrant Rights Clinic and Nickole G. Miller for Petitioner.

Xavier Becerra, Attorney General, Edward C. Dumont, State Solicitor General, Michael J. Mongan, Deputy State Solicitor General, and Samuel P. Siegel, Associate Deputy State Solicitor General, for Attorney General as Amicus Curiae on behalf of Petitioner.

Erin C. Smith, Jennafer D. Wagner, Nancy Lemon, Shuray Ghorishi, Catherine Ongiri, Anya Emerson; Mayer Brown, Donald M. Falk, Samantha Booth, Lilya Mitelman; and Jane K. Stoever for Family Violence Appellate Project, the University of California, Irvine School of Law Domestic Violence Clinic, Alternatives to Violence, the California Women's Law Center, Domestic Violence Legal Empowerment and Appeals Project, Professor Wendy M. Seiden, the Legal Aid Society of Orange County and Community Legal Services in Southeast Los Angeles, the Los Angeles Center for Law and Justice and the San Diego Volunteer Lawyer Program, Inc., as Amici Curiae on behalf of Petitioner.

Gibson, Dunn & Crutcher, Julian W. Poon, Eric A. Westlund, Nathanial P. Johnson, Victor Lee, Lali Madduri, Jennifer Rho, Sarah G. Reisman and Daniel M. Bruggebrew for the Immigrant Legal Resource Center, the Los Angeles Center for Law and Justice and the Immigrant Defenders Law Center as Amici Curiae on behalf of Petitioner.

O'Melveny & Myers, Matthew W. Close, David A. Lash, Marion M. Read, Kelly Volkar and Katie Gosewehr for Mental Health Organizations as Amici Curiae on behalf of Petitioner.

Ribet & Silver and Claudia Ribet for the Harriett Buhai Center for Family Law and the Association of Certified Family Law Specialists as Amici Curiae on behalf of Petitioner.

**Page 2 – S233757 – counsel continued**

**Counsel:**

Horvitz & Levy, Barry R. Levy, Mark A. Kressel and Allison W. Meredith for Senator Kevin de Leon, President Pro Tempore of the California State Senate, Anthony Rendon, Speaker of the California State Assembly, Senator Toni Atkins, Speaker Emeritus of the California State Assembly, Senator Ben Hueso, Chair of the Latino Legislative Caucus and Senator Ricardo Lara, former Chair of the Latino Legislative Caucus as Amici Curiae on behalf of Petitioner.

Morgan, Lewis & Bockius, Daniel Grunfeld, David Sean Cox, Nicolette L. Young, Lauren S. Schwartz and Thomas M. Peterson for Legal Services for Children, Immigration Center for Women and Children, Law Foundation of Silicon Valley and Lawyers' Committee for Civil Rights of the San Francisco Bay Area as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

Barnes & Thornburg, L. Rachel Lerman and Joseph Wahl as Amici Curiae, upon the request of the Supreme Court.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Joshua C. Lee
930 Riverside Parkway, Suite 10
West Sacramento, CA  95605
(949) 371-9733

Michael J. Mongan
Deputy State Solicitor General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-2548

L. Rachel Lerman
Barnes & Thornburg
2029 Century Park East, Suite 300
Los Angeles, CA  90067-2904
(310) 284-3880