Filed 12/8/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION SEVEN

| | |
|---|---|
| In re SCARLETT V., a Person Coming Under the Juvenile Court Law. | B311089 (Los Angeles County Super. Ct. No. 19CCJP04900A) |
| LOS ANGELES DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. FRANKLIN V., Defendant and Appellant; SCARLETT V., Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge. Reversed with directions.

Anne E. Fragasso, under appointment of the Court of Appeal, for Defendant and Appellant.

Marissa Coffey, under appointment of the Court of Appeal, for Appellant.

No appearance for Plaintiff and Respondent.

_____

## INTRODUCTION

The Los Angeles County Department of Children and Family Services filed a petition alleging Scarlett V. came within the jurisdiction of the juvenile court under Welfare and Institutions Code section 300.  After the juvenile court sustained the petition, Scarlett—who was born in Honduras—filed a request for Special Immigrant Juvenile (SIJ) findings under Code of Civil Procedure section 155.[1]  The juvenile court denied the request, ruling the findings were "discretionary."  Because the court committed legal error, and because Scarlett submitted unimpeached and uncontradicted evidence that required the court to enter an order with the findings Scarlett requested under section 155, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Juvenile Court Sustains a Petition Under Welfare and Institutions Code Section 300*

Scarlett was born in Honduras in 2013.  Scarlett's mother, Karen M., and her father, Franklin V., were also born in Honduras.  The family moved to the United States in 2015.

_____

[1]    Undesignated statutory references are to the Code of Civil Procedure.

Karen and Franklin also have a younger daughter who was born in the United States.

In July 2019 the Department received a referral claiming Franklin had attacked Karen. A Department social worker interviewed Karen, who stated that Franklin had physically and emotionally abused her for years and that she and Franklin had separated six months earlier. On the night of the most recent incident, Franklin arrived at the apartment where Karen lived with the children and began to argue with Karen and insult her. Eventually, Franklin hit Karen in the mouth and in the head several times, causing Karen to bleed and feel as though she was going to faint.

The social worker also interviewed Scarlett, who at the time was six years old. Scarlett stated that she was in the kitchen with her sister when her father attacked her mother, but that she heard the argument, heard her father say he was "going to kill" her mother, and knew her father had hit her mother. She also said that her father sometimes hit her and her sister with a belt on the legs and buttocks and that she was afraid of her father.

The Department filed a petition under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1). In October 2019 the court sustained an amended petition, finding true the allegations that, because of the July 2019 incident and other instances of domestic violence,[2] and because Franklin had hit Scarlett and her sister with a belt, Franklin placed Scarlett at risk of serious physical harm and Karen failed to protect her.

---

[2]    A social worker interviewed Scarlett again after the Department filed the petition, and Scarlett said her father had previously hit her mother.

3

The juvenile court declared Scarlett a dependent of the court, removed Scarlett from Franklin, released her to Karen, and ordered family maintenance services for Karen and enhancement services for Franklin.

      B.     *Scarlett Files a Request for SIJ Findings Under Section 155, Which the Court Denies*

On February 8, 2021 Scarlett filed a request with the juvenile court for SIJ findings under section 155.[3]  Using Judicial Council of California form JV-356,[4] Scarlett asked the court to find that she had been declared a dependent of the court and placed in Karen's custody; that reunification with Franklin was not viable under California law because of abuse and neglect; and that it was not in Scarlett's best interest to return to Honduras.

At a hearing the next day for the court to consider whether to terminate jurisdiction, counsel for Scarlett asked whether the court had received the request for SIJ findings.  The court

---

[3]     Section 155, subdivision (a)(1), gives juvenile courts "jurisdiction to make the factual findings necessary to enable a child to petition the United States Citizenship and Immigration Services for classification as a special immigrant juvenile pursuant to Section 1101(a)(27)(J) of Title 8 of the United States Code."  "Title 8 United States Code section 1101(a)(27)(J) 'is a form of immigration relief that affords undocumented children a pathway to lawful permanent residency and citizenship [by employing] "a unique hybrid procedure that directs the collaboration of state and federal systems."'" (*O.C. v. Superior Court* (2019) 44 Cal.App.5th 76, 82.)

[4]     Section 155, subdivision (e), directs the "Judicial Council [to] adopt any . . . forms needed to implement this section."

4

responded "yes" and asked counsel whether she wanted "to be heard." Counsel for Scarlett argued that Scarlett had met "the requirements . . . for relief," having come "under the court's jurisdiction because of the abuse that the court found true." The court asked whether any other parties wanted to be heard. Counsel for the Department did not object to Scarlett's request. Nevertheless, the court denied the request, stating "it's discretionary and the court decided not to." The court terminated jurisdiction and awarded sole custody of Scarlett to Karen.

On February 17, 2021 the juvenile court held a final hearing before entering the custody and visitation order. Counsel for Scarlett renewed her request for SIJ findings, to which the court responded: "You argued it, I made a ruling. We're not here for that." Scarlett timely appealed from the order denying her request for SIJ findings and terminating jurisdiction.

## DISCUSSION

A. *Applicable Law*

Congress "established the SIJ classification in 1990 to provide relief to immigrant children . . . whose interests would not be served by returning to their country of origin." (*Bianka M. v. Superior Court* (2018) 5 Cal.5th 1004, 1012 (*Bianka M.*).) Under the current version of the law, "a child is eligible for SIJ status if: (1) the child is a dependent of a juvenile court, in the custody of a state agency by court order, or in the custody of an individual or entity appointed by the court; (2) the child cannot reunify with one or both parents due to abuse, neglect, abandonment, or a similar basis found under state law; and (3) it is not in the child's best interest to return to his or her home

5

country or the home country of his or her parents." (*Id.* at p. 1013, fn. omitted; see 8 U.S.C. § 1101(a)(27)(J)(i)-(ii).) "SIJ applications are reviewed by the United States Citizenship and Immigration Service (USCIS), an agency within Department of Homeland Security (DHS)." (*Bianka M.*, at p. 1013.) "Once granted" by USCIS, "SIJ status permits a recipient to seek lawful permanent residence in the United States, which, in turn, permits the recipient to seek citizenship after five years." (*Ibid.*; see 8 U.S.C. §§ 1255(a) & (h), 1427(a); *In re Israel O.* (2015) 233 Cal.App.4th 279, 283 (*Israel O.*).)

"""While the federal government has exclusive jurisdiction with respect to immigration [citations] . . . , state juvenile courts play an important and indispensable role in the SIJ application process." [Citation.] Under section 1101(a)(27)(J) and its implementing regulations codified at 8 Code of Federal Regulations part 204.11 . . . , "state juvenile courts are charged with making a preliminary determination of the child's dependency and his or her best interests, which is a prerequisite to an application to adjust status as a special immigrant juvenile."" *(Israel O., supra,* 233 Cal.App.4th at p. 284; see *Bianka M., supra,* 5 Cal.5th at p. 1013 ["Under federal immigration regulations, each of the[ ] findings [under 8 U.S.C. § 1101(a)(27)(J)(i)-(ii)] is to be made in the course of state court proceedings."].)

"To provide a basis for SIJ-eligible children to secure the necessary state court findings, the California Legislature in 2014 enacted . . . section 155 (Stats. 2014, ch. 685, § 1). Section 155 confers jurisdiction on every superior court—including its juvenile, probate, and family divisions—to issue orders concerning the findings relevant to SIJ status." (*Bianka M.,*

6

*supra*, 5 Cal.5th at p. 1013; see § 155, subd. (a); *Alex R. v. Superior Court* (2016) 248 Cal.App.4th 1, 5.) Section 155, subdivision (b)(1), provides: "If an order is requested from the superior court making the necessary findings regarding [SIJ] status . . . , and there is evidence to support those findings, which may consist solely of, but is not limited to, a declaration by the child who is the subject of the petition, the court shall issue the order, which shall include all of the following findings: [¶] (A) The child was either of the following: [¶] (i) Declared a dependent of the court. [¶] (ii) Legally committed to, or placed under the custody of, a state agency or department, or an individual or entity appointed by the court. . . . [¶] (B) That reunification of the child with one or both of the child's parents was determined not to be viable because of abuse, neglect, abandonment, or a similar basis pursuant to California law. . . . [¶] (C) That it is not in the best interest of the child to be returned to the child's, or his or her parent's, previous country of nationality or country of last habitual residence." An order "denying [an] SIJ petition is the equivalent of a final, appealable judgment . . . ." (*Guardianship of S.H.R.* (2021) 68 Cal.App.5th 563, 574 (*S.H.R.*); see *Israel O.*, *supra*, 233 Cal.App.4th at p. 283 [hearing an appeal from the juvenile court's order declining to make requested SIJ findings].)

B.  *The Juvenile Court Erred in Denying Scarlett's Request for an Order with SIJ Findings*

Courts have disagreed over the superior court's role when ruling on a request for SIJ findings under section 155. As discussed, section 155, subdivision (b)(1), states that a court shall make the SIJ findings if "there is evidence to support those

7

findings, which may consist solely of . . . a declaration by the child who is the subject of the petition . . . ."  In *O.C. v. Superior Court* (2019) 44 Cal.App.5th 76 (*O.C.*), cited by Scarlett, the court interpreted section 155, subdivision (b)(1), to mean that, "if substantial evidence supports the requested SIJ findings, the issuance of the findings is mandatory."  (*O.C.,* at p. 83.)  Under this interpretation, the juvenile court's role is similar to that normally performed by a reviewing court.  Rather than act as an independent factfinder, the juvenile court determines whether there is substantial evidence to support the SIJ findings, i.e., "'evidence that is "reasonable, credible, and of solid value," such that a reasonable trier of fact could make such findings.'"  (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)

In *S.H.R.*, *supra*, 68 Cal.App.5th 563, however, the court rejected the *O.C.* court's interpretation of section 155.  The court in *S.H.R.* held that section 155 requires the juvenile court to determine "whether the petitioner has proved particular facts" and that the reference in subdivision (b)(1) to whether "there is evidence to support those findings" means whether the petitioner has met his or her burden of "'proof by a preponderance of the evidence.'"  (*S.H.R.*, at pp. 574, 576; see *id.* at p. 576 ["Because section 155 requires factual findings, we reject the *O.C.* court's 'substantial evidence' standard at the trial court level."].)  Therefore, the court in *S.H.R.* concluded, a petitioner is "required to prove by a preponderance of the evidence the existence of the facts specified in section 155."  (*S.H.R.,* at p. 576.)  And, according to the court in *S.H.R.*, where the petitioner contends on appeal "'the court erred in making findings against [the petitioner], "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.

8

[Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"'" (*Id.* at pp. 574-575.)

The juvenile court here erred under either interpretation of section 155 by ruling its determination on Scarlett's request for SIJ findings was "discretionary." As the Supreme Court explained in *Bianka M.*, *supra*, 5 Cal.5th 1004, "since its enactment, [section 155, subdivision (b)(1),] has made clear that a superior court 'shall' issue an order containing SIJ findings if there is evidence to support them." (*Bianka M.,* at p. 1025.) Therefore, the juvenile court, at a minimum, had to consider the evidence submitted by Scarlett and make a finding whether the evidence supported her requested SIJ findings (under either the substantial-evidence standard adopted by the court in *O.C.* or the preponderance-of-the-evidence standard adopted by the court in *S.H.R.*); if the evidence supported the findings, the court's duty to enter an order with the findings was mandatory, not discretionary. (See *Israel O.*, *supra*, 233 Cal.App.4th at p. 285 [a juvenile court "'has the authority and duty to make [SIJ status] findings' if the evidence before it supports those findings"]; see also *Bianka M.*, at p. 1025 [a "'state court's role'" under section 155 "'is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country'"].)

But the juvenile court's error went further. Even under the *S.H.R.* court's interpretation of section 155, subdivision (b)(1),

which required Scarlett to prove she was entitled to SIJ findings by a preponderance of the evidence (rather than simply submit substantial evidence to support SIJ findings), the juvenile court erred in failing to enter an order with those findings. That is because Scarlett provided evidence that was uncontradicted and unimpeached and that left no room for a contrary judicial determination.

The juvenile court declared Scarlett a dependent of the court. (See § 155, subd. (b)(1)(A).) The juvenile court also determined reunifying Scarlett with one of her parents, Franklin, was not "viable because of abuse, neglect, abandonment, or a similar basis pursuant to California law." (§ 155, subd. (b)(1)(B).) At the jurisdiction and disposition hearing, the juvenile court found by clear and convincing evidence that, because of Franklin's acts of domestic violence toward Karen and his denial he had abused her, there was a substantial danger to the physical health, safety, protection, or physical or emotional well-being of Scarlett if she were returned to her father's custody. (See Welf. & Inst. Code, § 361, subd. (c)(1).)

Finally, Scarlett provided uncontradicted, unimpeached, and compelling evidence it was "not in [her] best interest . . . to be returned" to Honduras, her and her parents' "previous country of nationality or country of last habitual residence." (§ 155, subd. (b)(1)(C).) At the time she filed her request for SIJ findings in 2021, Scarlett was seven years old and had lived in the United States since she was two years old. In support of the request, Scarlett's attorney stated under penalty of perjury that both of Scarlett's parents resided in the United States, that Scarlett lived in "a home where she is cared for" and "feels safe and comfortable," and that Scarlett was "attending school and has

10

adjusted well to life in the United States."  The Department did not object to, or present any evidence contradicting, this evidence.

In addition, the Department submitted evidence in support of the dependency petition that Karen had limited family in Honduras.  During an interview with a social worker, Karen stated her maternal grandmother raised her in Honduras until she was 15 years old because her mother "didn't want [her]" and "left with her [the mother's] partner."  The grandmother forced Karen to move out when Karen was 15 years old because the grandmother could no longer afford to raise her.  Karen stated that she did not know her father and that, to her knowledge, she was an only child.  There was no evidence to suggest a family member or other individual in Honduras was available to care for Scarlett.  Thus, the Department's evidence confirmed that Karen had limited, if any, family support in Honduras and that it was not in Scarlett's best interests to return.  (See *Eddie E. v. Superior Court* (2015) 234 Cal.App.4th 319, 333 [juvenile court erred in ruling it was in the child's best interest to return to his previous country of nationality where the child "lived his entire life here, ha[d] family here, and has no one in [his previous country] to turn to"]; *Leslie H. v. Superior Court* (2014) 224 Cal.App.4th 340, 352 [juvenile court erred in ruling it was in the child's best interests to return to her previous country of nationality as an "unaccompanied minor [who] had no one to return to safely . . . and with no one to care for her"].)

11

## DISPOSITION

The order denying Scarlett's request for SIJ findings is reversed. The juvenile court is directed to enter a new order granting the request and making the findings.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.