Filed 11/15/24  M.J. v. R.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| M.J.,<br>　　　　Appellant, | E081576 |
| v. | (Super.Ct.No. FLRI2302023) |
| R.D.,<br>　　　　Respondent. | |
| F.J.,<br>　　　　Appellant, | E081615 |
| v. | (Super.Ct.No. FLRI2302020) |
| R.D.,<br>　　　　Respondent. | OPINION |

CONSOLIDATED APPEALS from the Superior Court of Riverside County. Jennifer R. Gerard, Judge.  Reversed and remanded with directions.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Appellant M.J.

F.J., in pro. per.; and Paul A. Swiller, under appointment by the Court of Appeal, for Appellant F.J.

No appearance for Respondent R.D.

1

In separate proceedings heard on the same date, two brothers, M.J., age 12 and F.J., age 18 at the time of the filing of the petition sought orders granting their mother, Rosa D., full custody under a Uniform Parentage Act petition, as well as Special Immigrant Juvenile Status findings (SIJ or SIJS). M.J. and F.J. each filed declarations establishing their flight from Guatemala after their father, Rafael Z., abandoned the family without support, their mother's difficulty finding work to support the family, and the rampant gang violence that made it dangerous to remain in their country of origin. At their respective hearings, however, where no guardian ad litem was appointed or counsel was appointed (as to M.J.), the trial court determined that M.J. and F.J. did not know why they were in court, and did not know what documents had been filed in their actions and were denied relief. Both M.J. and F.J. appealed.[1]

On appeal, M.J. and F.J. argue the trial court erred in denying their petitions where their declarations established the grounds for relief. We reverse.

## BACKGROUND

We take the historical facts from the declarations filed by M.J. and F.J., because a child's declaration "alone can constitute evidence sufficient to establish eligibility for SIJ predicate findings." (*Guardianship of Saul H.* (2022) 13 Cal.5th 827, 843 (*Saul H.*).)

M.J. was born in 2011 in Guatemala, and was 12 years old at the time of the hearing. F.J. was born in 2004 in Guatemala, and was 18 years old at the time of the

---

[1] The appeals in Case Nos. E081576 (*M.J. v. R.D.*) and E081615 (*F.J. v. R.D.*) have been consolidated, with Case No. E081576 designated as the master file.

2

petition. Both M.J. and F.J. lived with their mother and their older sibling, Z.J. (collectively, the boys).

In 2012, their father left Guatemala when M.J. was one year old and F.J. was eight years old, and migrated to the United States with the understanding he would work for two years and return to Guatemala. However, the father never returned to Guatemala, and he stopped providing for the family, so neither M.J. nor F.J. had any relationship with their father.

In Guatemala, mother faced an extremely dangerous situation which forced the family to move from their home. She could not find a job that would support the family, so she worked cleaning homes, mending clothes, as well as washing and ironing clothes, but these jobs did not pay enough to feed and clothe the three brothers. The family was always hungry. Mother had to travel very far to deliver the clothes she washed and ironed, because only rich people could afford these services, and many times she was not paid for the ironing work because by the time she arrived after taking two buses, the clothes would arrive wrinkled.

Mother decided to migrate to the United States for the safety of the family because many neighbors and friends believed that their father continued to provide for the family, and this placed the whole family in danger of being targeted for ransom, kidnapping, and extortion. In addition, their mother was afraid the family would be confronted with the neighboring gangs, who might force the boys to be recruited. Violence has taken over many areas of Guatemala, and human trafficking groups as well as gangs that recruit young boys into joining by offering food, money, and protection.

On March 27, 2023, both M.J. and F.J. filed petitions to determine the parental relationship of their mother (who was named respondent in the trial court) and sought findings and orders respecting their eligibility for SIJS. The petitions requested that the court grant to their mother sole legal and physical custody of M.J. and F.J. and to issue SIJS orders, indicating that reunification with their father was not viable due to abandonment and neglect, and that it would not be in their best interest to return to Guatemala.

Specifically, the petitions alleged abandonment and neglect by their father as prescribed by section 155, subdivision (b)(1) of the Code of Civil Procedure, that the father left the family and never provided for the boys' basic necessities such as food, water, medicine, clothing, education, etc., never communicated with the boys and did not support them financially or emotionally. The boys alleged they did not have a relationship with their father, whose conduct falls within the definitions of abandonment and neglect, pursuant to Family Code sections 7822 and 342, subdivision (a), as well as Welfare and Institutions Code section 300, subdivisions (b) and (g).

The petitions were accompanied by declarations by M.J. and F.J. setting forth the relevant historical facts and the basis for their request for SIJS. Z.J. also filed a petition seeking the identical relief based on the identical facts.

On May 17, 2023, the matters were heard in the superior court. In Z.J.'s case, of which we have taken judicial notice, the court found that reunification with Z.J.'s father is not viable under California law, because Z.J. had presented sufficient evidence of abandonment and neglect by his father as prescribed by Code of Civil Procedure

section 155, subdivision (b)(1), in that Z.J.'s father left Z.J. when Z.J. was four years old, had never provided for Z.J. and his basic necessities, never communicated with Z.J., and did not support Z.J. financially or emotionally.

The court also found Z.J. did not have a relationship with his father and that his father's conduct fell within the definition of abandonment and neglect pursuant to Family Code sections 7822 and 3402, subdivision (a), and Welfare and Institutions Code section 300, subdivisions (b) and (g). The court found that it was not in Z.J.'s interest to return to his country of nationality.

Regarding M.J.'s hearing, which was conducted without the benefit of a guardian ad litem or appointment of counsel, the court first questioned M.J. about the abandonment by his father, then the court asked M.J. what he was asking the court to do and whether he was familiar with the paperwork that had been filed. M.J. responded to the court's questions that he was not sure why he was in court, although he recalled signing the papers. He knew his mother had brought him there to have a better life and the paperwork was explained to him. The court continued:

THE COURT: Do you remember what they told you?

[M.J.]: No.

THE COURT: Do you know what you want the Court to do for you today?

[M.J.]: To help us.

THE COURT: How do you want me to help you?

[M.J.]: To be legal in this state.

5

THE COURT:  Do you know what that means?

[M.J.]:  A little.

THE COURT:  Tell me what that means.

[M.J.]:  I'm not sure.

THE COURT:  Okay. Did someone tell you what that meant to be "legal"?

[M.J.]:  Yes.

THE COURT:  Who told you that?

[M.J.]:  My mother.

THE COURT:  What did she tell you?

[M.J.]:  To be legal so we can be better in life.

THE COURT:  Did she tell you what you had to tell the Court to do that?

[M.J.]:  No.

THE COURT:  Did anyone explain to you what you had to do to become legal when you filed this paperwork?

[M.J.]:  No.

THE COURT:  You don't know what paperwork you filed?

[M.J.]:  No.

THE COURT: You don't know why paperwork was filed that you signed.

[M.J.]:  I don't remember.

THE COURT:  Okay. I appreciate your honesty.

The court then found there was not enough evidence to grant the paternity findings, or the SIJ findings as M.J. did not know why he was in court that day and did not know about the paperwork he filed and denied the petition.

When F.J.'s case was called, he described the family situation and indicated that he was there for his mother's "paternity," referring to the action to determine parental relationship.  He explained how his father abandoned the family, his mother had to support the family and that she had difficulty doing so.  Thereafter, the following colloquy took place:

THE COURT:· Let me stop you.· Do you know what you are asking the Court to do today?

[F.J.]:  No.

THE COURT:  You don't know why you are here?

[F.J.]:  No.

THE COURT: Okay.· Did you file any documents with the court?

[F.J.]:  No.

THE COURT:  All right.· You are sure you didn't file anything with the court?

[F.J.]:  I'm not sure.

THE COURT:  Okay.· When did you turn 18?

[F.J.]:  December 3rd.

THE COURT:  You are almost 18 and a half.

[F.J.]:  Yes.

7

THE COURT:  All right.· Well, you have—there is a document that has been filed—several documents that have been filed with this court saying that you filed and signed these documents, but you are telling me you didn't.· So I'm concerned that someone else did this on your behalf and did not tell you, which is not your fault.

[F.J.]:  No. I made them, but I wasn't sure.

THE COURT:  You made what?

[F.J.]:  The documents.

THE COURT:  What documents?

[F.J.]:  Those are the documents—I don't remember how they are called, but those are the documents to be here.

THE COURT:  To be where?

[F.J.]:  In the United States.

THE COURT:  Right.  But you don't know—no one talked to you about why you filed those documents?

[F.J.]:  No.

Thereafter, the court denied F.J.'s petition, citing the same reasons as the court cited in M.J.'s hearing, finding that F.J. did "not know why he was in court today and does not know about the paperwork he filed.  Court cannot proceed with paternity findings or the special immigrant juvenile findings."

On June 22, 2023, both M.J. and F.J. appealed.

8

Both M.J. and F.J. argue that the trial court erred in denying their petitions where their declarations contained the relevant facts and information to warrant relief as SIJ, and denying the petition on grounds relating to their understanding of legal proceedings. We agree.

Congress established the SIJ classification in 1990 to provide relief to immigrant children who were eligible for long-term foster care and whose interests would not be served by returning to their country of origin. (Immigration Act of 1990, Pub.L. No. 101-649 (Nov. 29, 1990) 104 Stat. 4978.) The Act has been amended in the meantime, and in 2008, Congress eliminated the requirement that the child be found eligible for foster care. (William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub.L. No. 110-457, § 235(d)(1)(A) (Dec. 23, 2008) 122 Stat. 5044; *Bianka M. v. Superior Court* (2018) 5 Cal.5th 1004, 1012-1013 (*Bianka M.*); *Eddie E. v. Superior Court* (2013) 223 Cal.App.4th 622, 627-628.)

Under the amended law, a child is eligible for SIJ status if: (1) the child is a dependent of a juvenile court, in the custody of a state agency by court order, *or* in the custody of an individual or entity appointed by the court; (2) the child cannot reunify with one or both parents due to abuse, neglect, abandonment, or a similar basis found under state law; and (3) it is not in the child's best interest to return to his or her home country or the home country of his or her parents. (8 U.S.C. § 1101(a)(27)(J)(i)–(ii), italics added.) Under federal immigration regulations, each of these findings is to be

9

made in the course of state court proceedings. (8 C.F.R. § 204.11(c)(3)–(6), (d)(2)(i)–(iii) (2009); *Bianka M.*, *supra*, 5 Cal.5th at p. 1013.)

To obtain SIJS under (8 U.S.C. § 1101(a)(27)(J)), a petitioner can show an absent parent's abandonment by proof that the juvenile has never known that parent or has received only sporadic contact and support from that parent for a significant period. (*State v. Erick M.* (*In re Erick M.*) (2012) 284 Neb. 340, 350 [820 N.W.2d 639].) Whether an absent parent's parental rights should be terminated is not a factor for obtaining SIJS. (*Ibid.*)

Thus, SIJS is a federal immigration status created "to protect certain immigrant children and allow them to remain in the United States when it would not be in their best interests to be returned to their home countries." (*Saul H.*, *supra*, 13 Cal.5th at p. 837.) To facilitate the SIJ Act, the California Legislature enacted Code of Civil Procedure section 155 (Stats. 2014, ch. 685, § 1). Section 155 confers jurisdiction on every superior court—including its juvenile, probate, and family court divisions—to issue orders concerning the findings relevant to SIJ status. (Code Civ. Proc., § 155, subd. (a).)

Section 155, subdivision (b)(1) of the Code of Civil Procedure (Stats. 2023, ch. 851 § 2 (Assem. Bill No. 1650), eff. Jan. 1, 2024, operative Jan. 1, 2025) provides that, on request, a court "shall issue" an order containing SIJ predicate findings if "there is evidence to support those findings." (*Saul H.*, *supra*, 13 Cal.5th at p. 838.) The evidentiary support for SIJ predicate findings "may consist solely of" the child's declaration and that a court may not deny a petition based on its conclusion that the child's primary motivation in invoking the court's jurisdiction is immigration related.

(Code Civ. Proc., § 155, subd. (b)(1); *Saul H.*, at p. 838, citing *Bianka M.*, *supra*, 5 Cal.5th at p. 1024.)

Thus, "[a] superior court has jurisdiction under California law to make judicial determinations regarding the custody and care of children within the meaning of the federal Immigration and Nationality Act (8 U.S.C. Sec. 1101 et seq. and 8 C.F.R. Sec. 204.11), which includes, but is not limited to, the juvenile, probate, and family court divisions of the superior court. These courts have jurisdiction to make the factual findings necessary to enable a child to petition the United States Citizenship and Immigration Services for classification as a special immigrant juvenile pursuant to Section 1101(a)(27)(J) of Title 8 of the United States Code." (Code Civ. Proc., §155, subd. (a)(1).)

Each of the predicate findings listed in Code of Civil Procedure section 155 must be made in state court proceedings. (*Saul H.*, *supra*, 13 Cal.5th at p. 838.) "A state court order containing these findings is a required component of an immigrant child's application to the United States Citizenship and Immigration Services for special immigrant juvenile status, which allows the child to seek lawful permanent residence in the United States." (*Ibid.*)

The burden of proof of the facts to support SIJ predicate findings is proof by a preponderance of the evidence. (*Saul H.*, *supra*, 13 Cal.5th at p. 843.) The findings may be made in a proceeding under the Uniform Parentage Act (UPA), without joining the absent parent. (See *Bianka M.*, *supra*, 5 Cal.5th at p. 1020.) In *Bianka M.,* the California Supreme Court ruled that a proceeding under UPA to establish the mother-child

11

relationship, award custody to the mother, and make findings relevant to SIJ status was properly conducted without joining the absent father as a party, including findings concerning the prospect of reunification between the child and the absent father. (*Id.*, at pp. 1020, 1022-1023.)

Here, the trial court ignored the boys' declarations, which included all the requisite allegations for SIJ findings: they were in the custody of their mother and were seeking an order granting her full custody by the court; (2) they cannot reunify with their father due to abandonment; and (3) it is not in their best interest to return to their home country due to gang violence, human trafficking, and the danger of recruitment of the minors into a gang. Under these circumstances, the trial court was required to issue the SIJ findings.

Instead of granting the petitions of M.J. and F.J., the court quizzed them on their understanding of the legal proceedings. From the record it is clear that M.J. and F.J. were confused by the court's questions asking if *they* had filed the petitions, which caused confusion for them. From the colloquy in the courtroom summarized above, it is apparent that M.J. and F.J. interpreted the question literally. Considering M.J. was under the age of 18, this was of particular concern, given that a minor cannot represent himself in legal proceedings without a guardian ad litem. (Code Civ. Proc., § 372, subd. (a)(1).) While F.J. had attained the age of 18, he was a young immigrant who, along with M.J. and the mother, required the assistance of an interpreter, and had little familiarity with the law. None of the court's inquiries, nor its findings, pertained to the essential elements of the petitions necessary for the SIJS findings.

12

Because the trial court based its denial on matters related to M.J.'s and F.J.'s understanding of sophisticated legal proceedings, rather than on whether there was evidence in their declarations to warrant the findings, there is insufficient evidence to support the trial court's denial of their petitions.

## DISPOSITION

The orders denying the petitions are reversed and remanded with directions to appoint a guardian ad litem for M.J., and to make findings that M.J. and F.J. are entitled to Special Immigrant Juvenile Status.  M.J. and F.J., are awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

CODRINGTON
J.
FIELDS
J.